Coleman v. Bennett.

N. A. COLEMAN *v.* R. K. BENNETT.

(*Jackson.*   April Term, 1902.)

1.  **DAMAGES.** Negligent or wrongful acts must be the proximate cause.

It is a fundamental rule and an axiomatic principle of the law of damages that no action will lie for a negligent or wrongful act that is not the proximate cause, or one of the proximate causes, of the injury done.   (*Post, p.* 709.)

2.  **SAME.** Same.   Joint and several liability for concurrent wrongful acts of two or more.

The defendant's liability is determined alone by his own wrongful acts as a proximate cause of the plaintiff's loss and that liability is in no way influenced, or made greater or less, by the fact that the wrongful act of another person may have concurred proximately with his own in producing the loss; and it is immaterial to the defendant sued, that the other wrongdoer is not joined as defendant in the action, or that he has not yet been sued, or may not be sued at all, for if the wrongdoers are liable jointly or separately, the fault of one is no defense for the other or others.   (*Post, pp.* 711-713.)

Cases cited and approved:   Beopple v. Railroad, 104 Tenn., 428; Slater v. Mersereau, 64 N. Y., 138.

3.  **SAME.** Same.   Same.   Simultaneousness in operative effect and not in action is the controlling feature.

In cases of negligence of two independent persons concurrently resulting in injury to a third person, simultaneousness in operative effect, and not in the doing of the wrongful acts, is the controlling feature; and it is of no legal consequence, under this doctrine, that the construction of the levee as one cause of the injury by the wrongdoer not sued subsequent to the construction of the dam as the other concurrent cause of the injury by the wrongdoer sued.   (*Post, pp.* 713.)

Coleman v. Bennett.

4.  **SAME.** Measure for permanent and temporary injuries to land.

The measure of damages for injuries to land which are permanent in their nature is the depreciation in the market value of the property by reason of the wrongful act, once for all, while the measure of damages for injuries to land that are temporary in their nature is the impairment of the use of the property by the wrongful act up to the commencement of the action, with the right of successive suits, if the wrong should be continued.   (*Post, pp.* 714-719.)

Cases cited and approved:   Harmon v. Railroad, 87 Tenn., 614; Nashville v. Comar, 88 Tenn., 415.

5.  **SAME.** Same. Permanent injuries to land defined and contradistinguished from temporary injuries.

Injuries to land though not strictly absolute perpetuities nor positively irremediable in the last possible degree may, nevertheless, in a legal sense, be permanent as contradistinguished from temporary injuries.

Permanency, in the legal acceptation of the term, does not include the idea of absolute, but only of practical irremediability. (*Post, p.* 719.)

6.  **SAME.** Same. Case in judgment.

Where a defendant erected a dam in and across a stream upon his own land by which he completely obstructed the natural course of the water therein at that time and subsequently, which stream, after flowing through his land, flowed through that of the plaintiff, the inevitable effect of which was to throw the water in times of heavy rains upon the land of an adjoining owner, to prevent which as far as possible, such adjoining owner constructed a levee upon his own land. During a freshet, the dam and levee collected a very great quantity of water which washed away part of the levee, and overflowed and injured the crops and land of plaintiff.

Coleman v. Bennett.

The evidence showed that plaintiff would not have been damaged had it not been for the defendant's wrongful obstruction.

*Held,* that such dam and obstruction erected by defendant was the proximate cause, making him liable for all the damages notwithstanding the levee was a concurrent cause.

7. **DEMURRER TO EVIDENCE.** Admits truth of testimony and waives exceptions thereto.

A demurrer to the evidence admits the truth of all the testimony adduced by the plaintiff, with all legitimate and legal deductions therefrom; and it effectually waives all exceptions made by the defendant to testimony permitted by the trial judge to go to the jury; and the defendant must accept as absolutely true the case made by the plaintiff and his witnesses, and abide the consequences. (*Post, pp.* 710-711.)

Cases cited and approved: Hopkins v. Railroad, 96 Tenn., 409; Summers v. Railroad, 96 Tenn., 459; Railroad v. Leinart, 107 Tenn., 635.

8. **SAME.** Same. When overruled, case submitted to jury on evidence embodied therein.

Where a demurrer to evidence is overruled, it is proper for the trial judge to submit the case to a jury for assessment of damages upon the evidence embodied in the demurrer without permission to either party to introduce other testimony. (*Post, p.* 714.)

Cases cited and approved: Mitchell v. Railroad, 100 Tenn., 333; Manufacturing Co. v. Morris, 105 Tenn., 654.

9. **SAME.** Same. Same. Verdict upon evidence embodied in, is entitled to usual weight.

The verdict of a jury in a case submitted to it upon the evidence embodied in a demurrer to evidence is entitled to the same weight in the supreme court as a verdict in any other civil action, that is, it will not be disturbed in the supreme court, if there is any evidence to sustain it, and in considering that question the strongest legitimate view of the plaintiff's evidence will be accepted as true. (*Post, p.* 714.)

Coleman v. Bennett.

FROM GIBSON.

Appeal from Circuit Court of Gibson County.—JOHN R. BOND, Judge.

J. D. SENTER, for Coleman.

MCFARLAND & BOBBITT, and SPL. HILL, for Bennett.

MR. JUSTICE CALDWELL delivered the opinion of the Court.

This is an action *ex delicto,* brought by R. K. Bennett against N. A. Coleman, to recover damages for injuries averred to have been done to 25 acres of land owned by Bennett, and the crops growing thereon, by overflow of water, averred to have been caused by the wrongful obstruction of a natural water course.   The defendant demurred to the plaintiff's evidence.   The demurrer was overruled, and upon a submission of the case to a jury for assessment of damages a verdict was rendered, and a judgment was pronounced in favor of the plaintiff and against the defendant for $425.   Motion for a new trial having been overruled, the defendant appealed in error to this court.

The first assignment of error is directed against the action of the court below in overruling the demurrer to

the evidence.   The demurrer presented the proposition
that the obstruction complained of was the remote, and
not the proximate, cause of plaintiff's damages, and
therefore afforded no right of action.   If that proposi-
tion shall be found to be true in fact, the conclusion of
nonliability follows inevitably as matter of law.  It is
a fundamental rule—an axiomatic principle—of the law
of damages that no action will lie for a negligent or
wrongful act that is not the proximate cause, or one of
the proximate causes, of the injury done.

The water course in question is called "Cane Creek."
It runs from east to west through the lands of Coleman,
and then through the lands of Bennett, and is the prin-
cipal stream in their locality.   Early in the year 1898
Coleman erected a dam in and across this stream upon
his own land, thereby completely obstructing the natu-
ral course of the water therein at that time and subse-
quently.  The land of the plaintiff, Bennett, was situated
300 or 400 yards to the west of and below the obstruc-
tion.   W. N. Bennett, a brother of the plaintiff, owned
the land adjoining that of Coleman on the north, and
extending west beyond his western boundary, and for
some distance along the northern boundary of the plain-
tiff's land.   That part of W. N. Bennett's land adjacent
to Coleman's line is lower than Coleman's land; conse-
quently the inevitable effect of the obstruction was to
throw the water in times of heavy rains upon that part
of W. N. Bennett's land.   With a view of preventing
this result as far as possible, W. N. Bennett constructed

Coleman v. Bennett.

·a levee on his own land several hundred feet in length and about 6 feet high, beginning 30 or 40 feet above the obstruction, and running northwardly in the general direction of his east line. This levee was somewhat higher than the obstruction across the channel of the creek, but it was not so strong.

During a freshet in July, 1898, this obstruction and the levee collected a very large quantity of water. The 30 or 40 feet of space between Coleman's dam and the levee, though furnishing a considerable outlet, was not sufficient for the escape of all the surplus water, and, as a result, portions of the levee were washed away, the ·channel of the creek below the dam was partially filled with sand, loose dirt, and other things, and the land of the plaintiff, Bennett, was overflowed, and his crop of corn, as well as the land, was thereby greatly injured. ·A like injury to his growing crop and land occurred in the summer of 1899, before the bringing of this suit.

·   Such is the substance of the testimony in relation to the manner in which the plaintiff received the injuries of which he complains. On cross-examination he states that he suffered no injury to his land or crop until after his brother's levee broke, but he does not say in any part of his testimony that he would not have been injured but for the breaking of the levee, or that the construction and breaking of the levee injured him otherwise than has already been indicated. The demurrer to the evidence admitted the truth of all the testimony adduced by the plaintiff, with all legitimate legal deductions

·therefrom (*Hopkins* v. *Railroad,* 96 Tenn., 409, 34 S. W., .1029, 32 L. R. A., 354; *Summers* v. *Railroad,* 96 Tenn., 459, 35 S. W., 210) ; and it effectually waived all exceptions made by the defendant to testimony permitted by the trial judge to go to the jury (*Railway Co.* v. *Leinart,* ·107 Tenn., 635, 64 S. W., 899).

It follows, therefore, that the defendant must accept ·as absolutely true the case made by the plaintiff and his ·witnesses, and abide the consequences. In that view there can be no doubt that Coleman's erection of the obstruction in the creek was wrongful, and that he thereby became legally liable to the plaintiff for all damages proximately resulting therefrom. Nor can there be any ·doubt that his wrongful act in that respect was at least one of the proximate causes of the damage to plaintiff's land and crops. Taking the evidence introduced by the plaintiff as true, it is perfectly clear that he would not have been damaged at all but for the presence of that obstruction, and, consequently, that the obstruction was a proximate cause of that damage. It is of no avail to Coleman that his misconduct was not the sole producing cause of the destructive overflows. He can find no protection against liability for his wrong in the fact that the construction and breaking of W. N. Bennett's levee contributed proximately to the damage sustained by the plaintiff, or made it greater than it would otherwise have been. The fact of his liability is determined alone by his own wrongful act as a proximate cause of the plaintiff's loss, and that liability is in no way influenced,

or made greater or less, by the fact that the wrongful act of another person may have concurred proximately with his own in producing the loss.

Nor does it matter in the least, conceding a proximate and concurrent wrong on the part of W. N. Bennett, that he is not joined as a defendant in this action, or that he has not yet been sued, or may not be sued at all. "In instances where the wrongful acts of two or more persons concur as proximate causes of an injury, the wrongdoers are liable jointly or separately, and the fault of one is no defense for the other or others." *Bcopple* v. *Railroad,* 104 Tenn., 428, 58 S. W., 233, and citation.

"If the damage has resulted directly from concurrent wrongful acts or neglects of two persons, each of these acts may be counted on as the wrongful cause, and the parties held responsible, either jointly or severally, for the injury." Cooley, Torts, 78, 79.

"If the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury." 1 Thomp., Neg., section 75.

"This rule obtains, although it is impossible to determine in what proportion each of the wrongdoers contributed to the injury; although the act alone of the party sued might have caused the entire injury, and although, if his acts had not concurred in producing the wrong, the same damages would have resulted from the

act of the other. Thus, two independent contractors were negligent in performing their respective portions of the work, so that an accumulation of water entered the plaintiff's cellar, damaging his goods. It could not be ascertained how much of the water was caused to flow by the negligence of each contractor. One of them was sued, and was held liable for the whole damage." Id. section 76, citing *Slater* v. *Mersereau,* 64 N. Y. 138.

"In cases of this character the negligence of two independent persons may concurrently result in injury to a third, in which event the injured party may maintain his action against either or both of the negligent parties." 16 Am. & Eng. Enc. Law, 443, and cases cited. It is of no legal consequence, under this doctrine, that the construction of W. N. Bennett's levee was subsequent to that of Coleman's dam, and therefore nearer in point of time to the injuries. Simultaneity in operative effect, and not in the doing of the wrongful acts, is the controlling feature.

Another contention made under the assignment against the overruling of the demurrer to the evidence is that there is, in legal effect, no proof of the amount of the loss sustained by the plaintiff, because the witnesses were examined on a wrong basis, and only undertook to state the difference between the value of the plaintiff's land before the overflows and afterwards. A complete answer to this contention, without deciding at present the probative effect of the testimony in reference to the injury to the land, is found in the fact that

there is other testimony, direct and positive, as to the extent of the injury caused to the plaintiff's crops. There being such other testimony, and the suit having been brought to recover damages for injury to the crops, as well as for injury to the land, it is manifest that there was proof to sustain the plaintiff's action, in part at least.

From all that has been said it is obvious that the plaintiff was entitled to a recovery for some amount, and, hence that the demurrer to the evidence was properly overruled. The filing of that demurrer by the defendant, and the joinder therein by the plaintiff, closed the evidence absolutely and for all purposes; and when the demurrer was disallowed the learned trial judge properly submitted the case to the jury for the assessment of damages upon the evidence embodied in the demurrer, and without permission to either party to introduce other testimony. *Mitchell* v. *Railway Co.,* 100 Tenn., 333, 45 S. W., 337, 40 L. R. A., 426; *Manufacturing Co.* v. *Morris,* 105 Tenn., 654, 58 S. W., 651.

The verdict of a jury in such a case and upon such an issue has the same weight in this court as a verdict in any other civil action,—that is, it will not be disturbed here if there is any evidence to sustain it in its amount, —and in considering that question the strongest legitimate view of the plaintiff's evidence will be considered as true. Conceding all this, and passing to the action of the court in overruling his motion for a new trial, Coleman, in another assignment of error, makes the asser-

tion that there is no evidence to sustain the verdict; and under this assignment he renews the contention that evidence of the difference between the market value of the land before the overflows and its market value subsequently can have no legal effect whatever; that such evidence proceeds upon an improper basis for a case of this kind, and establishes nothing at all in a true legal sense. He agrees that such a standard is proper, and that such evidence is legally efficacious where the land has been permanently injured, and the action is brought for a permanent injury; but he strenuously insists that such a standard is wholly inapplicable, and such evidence utterly devoid of any legal force or virtue in this case.

As before observed, this objection, though in form embracing the whole scope of the plaintiff's action, in fact embraces only a part of it. The suit having been brought for injury to the crops as well as for injury to the land, the testimony with respect to injury to the crops is really not questioned in the assignment, nor, indeed, is it questionable in its form or standard. The plaintiff says (and he is corroborated by other witnesses) the crop in 1898, and again that in 1899, consisted of about 20 acres of corn; that each crop, before the respective overflows, in its then advanced state, was worth about $8 or $10 per acre, and that after the overflow in each year it was worth only about $1.50 or $2 per acre. Though not absolutely definite as to amount, this evidence was sufficiently certain, if credited by the jury,

as it must have been in view of the verdict, to afford a legal basis of calculation, which it was clearly within the province of the jury to make.

The verdict, however, is entire, and from its amount (being in excess of the owner's damage to the crops) necessarily include some allowance for damage to the land; consequently there is no evidence to sustain the verdict as an entirety, unless the evidence with respect to the injury to the land has some probative effect. Two classes of injuries to realty are considered, and two rules for the measurement of damages, one for each class, are announced in *Harmon* v. *Railroad,* 87 Tenn., 614, 11 S. W., 703, which was an action by an abutting lot owner for excessive and improper use of a street by a railroad company; and in *City of Nashville* v. *Comar,* 88 Tenn., 415, 12 S. W., 1027, 7 L. R. A., 465, which was an action for damages caused to the premises of the plaintiff by an overflow from a defective sewer of the defendant city.

The first class includes injuries that are permanent in their nature, and for these the measure of damages is the depreciation in the market value of the property by reason of the defendant's wrong, once for all. The second class includes injuries that are temporary in their nature, and for these the measure of damages is the impairment of the use of the property by the wrongful act of the defendant up to the commencement of the action, with the right of successive suits if the wrong should be continued. The reason for the distinction is that the

Coleman v. Bennett.

wrongdoer in the latter case will not be presumed to intend to continue his misconduct, or to be given license to do so.

The plaintiff, with all requisite form and circumstantiality, avers in his declaration that the overflows caused by the wrongful obstruction of the creek "washed the soil" from his 25 acres of land, and "rendered it practically worthless." On being asked to describe the character and nature of the obstruction placed in the creek by Coleman, the plaintiff answered as follows: "It seems to have been cedar brush put down in the bottom of the creek, and logs placed on them and piled up 2½ or 3 feet above the bank of the creek, and logs extending clear across the creek, and brush and straw placed on, which made it secure." He then said that the creek at this place was about 5 feet deep and 15 feet wide.

Continuing his testimony, he said the 25 acres described in the declaration were "mostly good bottom land," and that it did not overflow before the erection of the dam across the creek; that by reason of the overflows and the filling of the channel of the creek, caused by this obstruction, "the land was practically worthless as farm land" when this suit was commenced; that the overflows "just ruined it so it would be worthless to cultivate;" that "sand was washed on it, and deep washes through it;" that "the creek has filled up all the way from before it strikes my land clear on down through my land, and before it gets through my land it is practically filled up." Thus, in both pleading and

proof, a plain case of permanent damage is made. This being true, it was permissible, under the first of the two rules announced in the two cases last mentioned to show the depreciation in the market value of the land resulting from the overflows thereof.

On the point of depreciation in value and the extent of it the plaintiff said that this land was reasonably worth $40 per acre on the market before the damage caused by the obstruction; that "it wasn't worth anything for farming land at all" in its damaged condition; and that in that condition it is worth "on the market, if sold, from $5 to $10 per acre." Several other witnesses testified to the same general effect. The other rule was applied in the case of *City of Nashville* v. *Comar*, supra, because it was there assumed by the court that the sewer that had caused the overflow complained of was merely defective in its construction, and that the city would make such change as to cure the defect and prevent the recurrence of an overflow of Comar's property. The latter rule was, for a like reason, applied in *Harmon* v. *Railroad*, supra.

The injury to the land in the present case, however, had already been done when this suit was commenced. It was then fixed, and in no sense prospective. It is no longer dependent upon, or influenced by, the nature of the dam, which may hereafter be removed. No assumption in reference to such future action can now change the fixed situation, or render that which is in fact a permanent injury only a temporary one in law. If the ob-

struction should be voluntarily removed by Coleman, or should be abated as a nuisance at the suit of the plaintiff, the original *status quo* would not thereby the restored. That course would in no sense repair the damage hitherto suffered by the plaintiff, though it might in some measure prevent the future destruction of the small value that is left in the land. It would not remove the sand that has covered a part of the land, thereby destroying its productiveness; nor would it fill the gullies that have been formed, and make their surface productive as heretofore.

These injuries, though they may not, strictly speaking, be absolute perpetuities, and positively irremedial in the last possible degree, are, nevertheless, in a legal sense, permanent, as contradistinguished from temporary. Permanency, in the legal acceptation of the term, does not include the idea of absolute, but only of practical, irremediability. The dam in its nature is temporary in the sense that it may be readily removed, but the injuries already inflicted are permanent; and its abatement at this late day would not, under the proof, make them any less so. They are practically irremediable, and hence, as before indicated, they are properly to be estimated by the consequent depreciation in the market value of the land. When the testimony in respect to the extent of this depreciation is considered in connection with that as to the extent of the injury to the crops, there is ample evidence to support the verdict.

Let the judgment be affirmed.