## CITY OF HENRYETTA v. RUNYAN.

No. 33453.   May 31, 1950.

*219 P. 2d 220.*

W. E. Foster, of Henryetta, and W. C. Alley, of Okmulgee, for plaintiff in error.

Steele & Boatman, of Okmulgee, for defendant in error.

ARNOLD, V.C.J.   Action by W. H. Runyan against the city of Henryetta, a municipal corporation. Judgment for plaintiff, and defendant appeals.

In 1928, the city of Henryetta, for the purpose of creating a water supply, constructed a dam across Wolf creek near the city with a spillway and filtering basins for the purpose of purifying the water collected by the dam before pumping the same through its distributing system in the city. For the purpose of disposing of the silt and other solid substances removed from the water by its filtering process, the city installed large pipes below the filters which carried this refuse matter back into the old channel of Wolf creek. This system of disposal was found to be inadequate and in 1932 a new channel was constructed or formed by the action of the waters through the spillway which carried this refuse matter some half mile from the filtering basins before it was returned to the old channel of Wolf creek on land purchased by the city but opposite some of the land owned by plaintiff.

Plaintiff commenced his action in August, 1942, but it thereafter remained dormant until February, 1947, when the amended petition upon which the case was tried was filed by leave of court. This latter pleading is denominated second amended petition and alleges some damages which accrued subsequent to the commencement of the action.

Plaintiff alleged that the method adopted by the city in 1932 of disposing of the refuse matter from the filters has resulted in filling water holes in the stream on his land with silt and mud so that the same became boggy and dangerous to livestock and that the water was so polluted that his stock would not drink it; that the water discharged over the spillway through the new channel came down with such force as to cause his lands to overflow where they bordered the stream, resulting in loss of crops growing thereon in 1941, 1942, and 1945, and permanent injury to the land; that in 1940 he lost a saddle horse which bogged down in one of the holes in the creek which had been filled with silt and other refuse from the filters and that it was so injured in removing it from the bog that it died; that in 1941 he lost two head of cattle which bogged down in one of the holes and drowned, and in 1945 he lost one milk

cow in the same manner; that during each of the years 1941, 1942, and 1945, his fences were destroyed by the high water; and that his milk production fell off on account of the pollution of the water by the deposit of the silt in the water which his cows were forced to drink.

Defendant denied generally all allegations in plaintiff's second amended petition except such as were admitted; admitted the construction of the dam and reservoir for the purpose of procuring a supply of water for the inhabitants of the city, the construction of the filtering basins and the manner of disposing of refuse matter therefrom, but denied any negligence in the construction of the waterworks system or in the operation thereof; it denied that the construction and operation of its water plant had resulted in increasing the flow of water through Wolf creek and alleged that the manner in which it had disposed of the refuse matter from the filters was the only possible manner of disposing of the same and that this method was a necessary and unavoidable incident to the efficient operation of the water system; that if plaintiff had sustained any injuries as alleged in his petition, the same were caused by an act of God, ·namely, unforeseeable rainfall and floods which were not due to any negligence of the defendant. It pleaded the statute of limitation.

The testimony of plaintiff and his witnesses generally conforms to his allegations and shows that the water holes in the creek along his land were filled with silt and establishes that the horse which he lost was of the value of $75, the two head of cattle of the value of $80, the milk cow of the value of $75, and that the cost of repairing the fences in 1941 and 1942 amounted to $20 for each year and for 1945 to the sum of $60. There was no competent evidence produced to establish the damage, if any, sustained by plaintiff by the destruction of growing crops on his land but there was evidence which establishes the rental value of 25 acres of his land which were not cultivated in 1945 because of their flooded condition and that this rental value was $4 per acre. In this connection plaintiff claimed and offered evidence that this particular 25 acres of land had been permanently damaged 50 per cent and that the land is reasonably worth $50 per acre. The total damages proven was $955.

On behalf of defendant the proof is that the structures and installations constituting its water system are in strict conformity to the best approved engineering plans and specifications and that its purifying process is the most modern known to science; that this system is used generally by municipalities throughout the state and that it has the approval of the State Board of Health; that all of the water diverted by it from the channel of Wolf Creek in excess of its reservoir capacity, together with the sediment from its purifying plant, is returned to the old channel of the creek before leaving the lands of defendant; that Wolf Creek is a crooked, shallow stream and in seasons of heavy rains has always overflowed and flooded bordering lands; that in April, 1945, that vicinity had the heaviest rainfall in 40 years causing a most unusual flood condition in Wolf creek.

Upon the question raised by plaintiff, that the speed and force of the water was so increased by the height of the spillway as to cause the overflow of his land, the evidence is in conflict. There is evidence for plaintiff that the decline of the spillway is great (about 80 feet) and sharp and the injury to his land from flood waters was caused by the added force of the water coming down the spillway channel, while testimony for defendant tends to show that the distance between the spillway and the point where the water is returned to the channel of the stream would cause the water to spread out to such an extent that this added force and speed would be dissipated and that the flow would be no greater or more harmful than when it came from the upper reaches of the creek without

the intervention of the dam and spill-way.

The question of the applicability of the statute of limitation was submitted to the jury by instructions Nos. 9 and 10 to which the defendant excepted but offered no other instruction on the point. His contention as to the statute of limitation is not based upon asserted imperfection or incorrectness of the instruction given. His whole contention here, on the question, is that the statute of limitation applied and barred recovery, and the cause should not have been submitted to the jury for this reason.

For reversal of the judgment, which was in plaintiff's favor for $1,500, defendant makes its argument in its brief under four propositions. The first proposition reads:

"No actionable negligence is shown to exist in either the construction or operation of the dam and treating plant."

It is conceded by the plaintiff that no negligence is shown or claimed in the construction of the dam or treating plant. The issue of negligence is as to the operation of the filtration plant and spillway.

Since the manner of operation of the purification plant is the bone of contention between the parties, and since defendant's second proposition is that plaintiff's cause of action is barred by the 2-year statute of limitation, the questions thus raised are so related and interwoven by the argument and by expressions in authorities relied on by both parties the questions of the manner of operation of the purification plant and the application of the statute of limitation to plaintiff's cause of action will be considered and discussed together.

As we understand the argument of defendant it insists that the waterworks system of the city, including the purification plant, is permanent and indispensable to the welfare of its people and that the manner of disposal of the sediment accumulated by the purifying process is incapable of being remedied by the expenditure of labor or money; that it disposes of this sediment by returning it to the channel of the stream before it leaves its own land and that the bed of the stream is the natural and only possible method for disposing of the same. Its argument upon the public necessity and the permanence of its manner of operating the plant and its application of the statute of limitation relied on is based largely upon the holding of this court in the case of City of Stillwater v. Robertson et ux., 192 Okla. 395, 136 P. 2d 923. This court held, in Stillwater v. Robertson, supra, that the very purpose of raising the height of the dam was to increase the extent of the reservoir and that the eventual consequence of this would be to flood a portion of Robertson's land and this result was obvious at the time of completion of the project and set the statute in motion. We think under the clarified contentions of the parties as above set out the rule announced in the Stillwater case is not applicable.

Under the evidence contained in this record as to the injuries to and loss of plaintiff's livestock, the rule of obvious consequential results may not be invoked by defendant in defense of the action in these respects. When defendant takes water from the stream into its purification plant it is chemically treated by the addition of aluminum sulphate. The action of this chemical, as disclosed by the testimony, is to precipitate and coalesce the solid matters in the water thus making the water fit and wholesome for use by the city's inhabitants. When the settling basins containing this sediment are cleaned out and the sediment is returned to the channel of the creek through, the new spillway channel the form and structure of the sediment, by reason of the cohesive effect of the chemicals upon it, are quite different from what the component parts thereof were when it came from the upper reaches of the stream in solution. In

its coalesced and cohesive form it no longer flows freely and readily with the course of the stream but settles in any depressions which will receive and hold it, such as the water holes described in the evidence and which were valuable to plaintiff for watering his stock. The stream here involved meanders through the land of plaintiff, and although these holes in the creek bed were used by plaintiff for watering his stock the alleged boggy condition created in the water holes may not have been obvious to the plaintiff as dangerous to his livestock until the loss here complained of actually occurred. We think that the rule announced by this court in the case of City of Altus v. Fletcher, 192 Okla. 20, 132 P. 2d 942, is the rule which is properly applicable to the condition thus shown to have arisen. The second paragraph of the syllabus to that case reads:

"When such improvement is permanent in its character and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there can be as many successive recoveries as there are successive injuries."

We cannot concede the correctness of defendant's contention that the disposal of the sediment from the purification plant in the manner shown by the testimony is the only possible manner for disposing of it. The possibilities of engineering achievement are so unlimited that it cannot be said as a matter of law that the dangerous condition in the bed of the creek resulting from the discharge of this sediment therein cannot be remedied and abated by the expenditure of labor and money.

That plaintiff's land would be flooded by reason of the increased speed of the water from the reservoir at any time after the construction of the spillway and spillway channel could have been reasonably foreseen and was a natural consequence also presented a question of fact for the jury as to the applicability of the statute of limitation.

See Fletcher v. City of Altus, 188 Okla. 342, 108 P. 2d 781.

The amount of damages awarded by the jury and the judgment of the court is excessive as hereinbefore demonstrated.

Reversed, with directions to grant a new trial unless the plaintiff files a remittitur of the excessive portion of the judgment, ($545,) within 10 days after the mandate is spread of record.

DAVISON, C.J., and WELCH, CORN, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.