F. C. Helm, Henryetta, for plaintiff in error.

Steele & Boatman, Okmulgee, for defendant in error.

HALLEY, V.C.J.  W. H. Runyan sued the city of Henryetta, a municipal corporation, for $1,777, as damages alleged to have accrued through the negligent construction and operation of a dam, spillway, settling basin, and other facilities on Wolf creek, near the city of Henryetta, and below which plaintiff owned 360 acres of land which he used for farming and stock raising.

We shall refer to the installations of the defendant as the "waterworks" and to the parties as they appeared in the trial court.

The case was tried to a jury, which found for the plaintiff in the sum of $684.58, and defendant has appealed.

The principal grounds relied upon for reversal are that the verdict and judgment are not supported by the evidence and that certain erroneous instructions were given to the jury and certain requested instructions refused. It was also alleged by the defendant that plaintiff's cause of action was barred by limitations.

The waterworks was erected shortly prior to 1930. In 1942, the plaintiff sued the city of Henryetta for damages very similar to those alleged in the present action.  The former action resulted in a judgment for the plaintiff.  This court affirmed the judgment but required a remittitur.  This case was reported in 203 Okla. 153, 219 P. 2d 220, and will be referred to later in this opinion.

In the present action, plaintiff alleges that the waterworks of the defendant were so constructed and operated as to constitute a public nuisance.  It is alleged that the spillway was constructed on a hill near the west side of the dam, which changed the course of Wolf creek from its original channel and caused a drop of 80 feet before the water reached plaintiff's land, resulting in a torrent of water which carried rock and debris upon the plaintiff's land, destroying ¾ acre to his damage in the sum of $75; that it caused plaintiff's land to overflow, destroying a truck patch with a net value of $450; that the overflow destroyed his fences, letting his stock run at .

302

large upon the land of others, and that the plaintiff was compelled to pay damages resulting therefrom; that the waterworks polluted the water in Wolf creek and forced plaintiff to spend many hours watering his livestock from a well and in policing and herding his stock; that the waterworks caused the creek to become boggy, as a result of which plaintiff lost one horse and two cows; that plaintiff had been compelled to rebuild his fences at considerable expense. Defendant denied plaintiff's allegations and pleaded contributory negligence and that plaintiff's action was barred by limitations. When the dam was erected, the spillway was shown by the testimony of an engineer to be only 42 feet above the old channel of the creek instead of the alleged 80 feet as testified by defendant. Below the spillway there were three overfalls or sub-dams, the highest of which allowed the water to fall only twelve feet at that point. The engineer who had surveyed and mapped the project testified that the gradual descent of the water because of the overfalls erected by defendant tended to and did largely dissipate its speed and force before it reached the plaintiff's land. It was admitted that the overflow water was returned to the old channel of Wolf creek before it reached the plaintiff's land.

The alleged loss of livestock by boggy conditions allegedly caused by the waterworks is supported to some extent by testimony to the effect that the old creek bed was filled completely with mud and silt below the dam, and that some of these materials entered the creek bed upon the land of the plaintiff. It appears that this condition caused the defendant to install a sixteen-inch drain or sewer pipe from the filter plant some 1,900 feet to near the land of the plaintiff. There was undisputed testimony that the creek was boggy for three miles above the dam and no evidence that it was not boggy before the waterworks plant was installed.

On the allegations as to the pollution of the creek, plaintiff testified that his cattle refused to drink the water except when it rained every day. Dr. Isham, a chemist, had analyzed the water and testified that the water from the water-treating plant was very good water for stock when it entered upon plaintiff's land. Plaintiff had no analysis made of the allegedly polluted water, but some witnesses testified that it had an odor and was always muddy.

At the settling basin where the water was chemically treated and filtered, the settling tanks were cleaned out two or three times a year and part of the filters were cleaned each day. This resulted in removing about five gallons of mud and silt. It appears that there was a leak in the dam and that fresh water ranging from 8,000 to 15,000 gallons a day flowed down the pipeline to a point near plaintiff's land. This pipeline or sewer line was erected for the express purpose of carrying water from the filter plant, just below the dam, to a point on Wolf creek just before it entered plaintiff's land.

We shall first discuss the plea of limitations. The court instructed the jury to limit recovery to two years next preceding the filing of this action, but defendant claims that the action nevertheless is barred by limitations. This contention is based upon the ruling announced in Fletcher v. City of Altus, 188 Okla. 342, 108 P. 2d 781, wherein the following statement was made:

"Whether a cause of action for injuries resulting from the erection of a permanent public improvement arises upon the completion of the improvement depends upon a determination of the issue of fact as to whether the injuries complained of are the natural result, or may be regarded as obviously consequential, of the erection of such permanent improvement, and such issue of fact should be submitted to the jury for determination as a prerequisite for determining whether or not such action is barred by the statute of limitations."

However, in City of Henryetta v. Runyan, supra, it was said:

"When an improvement is permanent in character * * * and its continued operation is not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there can be as many successive recoveries as there are successive injuries."

We think the latter rule is applicable here, because practically the same conditions existed in the former case as are shown by the record to exist in the present case. The waterworks was not necessarily or obviously injurious, but might or not prove to be so; and we do not think that the erection and operation thereof disclosed an obviously consequential result of injury to the plaintiff.

Defendant contends that plaintiff failed to prove a causal connection between the damages complained of and the alleged wrongful and negligent acts of the defendant. The case of Prest-O-Lite Co., Inc., v. Howery, 169 Okla. 408, 37 P. 2d 303, is cited, and in discussing the question of proving the pollution of water it is said:

"In order to sustain a recovery in an action based on negligence, there must be a causal connection between the negligence averred and the injury received, and such causal connection cannot be established by basing inference upon inference, or presumption upon presumption."

The undisputed records of the United States Weather Bureau showed that in June, 1948, over fourteen inches of rain fell in Okmulgee county, and that the land of 600 persons in that area was affected thereby. In 1949 the rainfall was over 200% above normal in Okmulgee county. Since it was shown that there was an abnormal rainfall about the time plaintiff's injuries occurred in regard to the destruction of his truck patch and fences, it is logical to assume that Wolf creek flooded plaintiff's land on account of the unusual rainfall. It was clearly established that this creek was a turbulent stream with a narrow channel, and subject to overflow. There was no showing by plaintiff that it was not subject to overflow before defendant's waterworks plant was erected.

We find that plaintiff failed to establish a causal connection between the alleged damage to his growing truck patch and fences (alleged to amount to $690 of the total damages) and the erection and operation of the waterworks.

As to the loss of three head of livestock from their bogging down in Wolf creek, there is undisputed testimony that the creek is boggy for three miles above the dam as well as below the dam. There is no testimony to show that the creek was not boggy below the dam before the erection of the waterworks. There is testimony showing that considerable mud went down the 1900-foot drain or sewer pipe which was installed in 1949. Considerable mud and silt flowed from the waterworks plant, and some of it must have reached plaintiff's land, but it was shown that the filters were washed each day and that a large amount of fresh water carried this mud down the pipelines.

The testimony of Dr. Isham shows that the chemicals put in the water at the settling basin did not destroy its value for use for livestock. All of this water was returned to the old creek bed before it reached plaintiff's land. Plaintiff alleges damages in the sum of $480 on account of the water being made unfit for livestock, forcing him to pump water for four hours a day at an alleged value of $1 per hour. Plaintiff testified that the water reaching his pasture had an odor, was muddy, and that his livestock refused to drink it.

Defendant relies upon the rule announced in Shell Oil Co. v. Blubaugh, 199 Okla. 353, 185 P. 2d 959, that where one claims damages by pollution of water he must show a causal connection between the alleged injury and the acts of the defendant, and that before recovery can be sustained it must be shown that the alleged acts of the de-

fendant were the proximate cause of the alleged injuries to plaintiff, and that while proximate cause may be proved by circumstantial evidence a recovery cannot be had by adding inference to inference and presumption to presumption, and that the want of evidence cannot be thus supplied by deduction. It is a well-established rule of law that a judgment may not be based upon speculation and conjecture.

In Prest-O-Lite Co., Inc., v. Howery, supra, a judgment for pollution of water was reversed because plaintiff had no analysis made of the water and no evidence was produced showing that the acts of defendant caused the damages complained of, leaving the verdict based only upon presumption and speculation.

The defendant complains of instructions 8, 14, 15, 16, and 16-B. In instruction 8, the court told the jury that if it found from a preponderance of the evidence that defendant "permitted water to flow from its spillway and facilities * * * in and upon the plaintiff's land, in such quantities as to injure such land for the growing of crops and maintenance of livestock, and plaintiff was thereby damaged", it should find for the plaintiff in such sum as it found he was damaged. The jury should have been instructed that if it found that the overflow was caused by the erection and operation of plaintiff's waterworks, and not from some other factor such as excessive rainfall, then it might find for the plaintiff.

Instruction 14 is likewise objectionable in that it fails to state to the jury that before it can find for the plaintiff for such damages as he suffered, it must also find that such damages were caused by the acts of defendant. The same objection is urged as to instruction 16-B. These instructions were too favorable to the plaintiff, and failed to advise the jury that the alleged injuries must have resulted from the defendant's construction and operation of its waterworks and not from any other cause such as excessive rainfall.

Requested instructions 1, 2, 3, and 6 were refused by the court, but we believe they state the law much more clearly than the instructions given and complained of. We do not agree that instruction 6 should have been given, and we have already discussed the question of limitations. We conclude that the cause of action was not barred by limitations, but that as many recoveries may be had as there are injuries accruing.

Plaintiff testified that ¾ acre of land was worth $100 per acre before its fertility was destroyed by rocks and other debris washed thereupon by the water from the spillway and filter plant. The damages for this injury amounted to only $75. The evidence in support of this item is sufficient to sustain a finding for the plaintiff, despite the fact that this land was part of the land claimed to have been damaged in plaintiff's first action against defendant.

The causal connection between the other items of alleged damage and the construction and operation of the waterworks plant is lacking. No evidence appears to show that the acts of the defendant were the proximate cause of the injuries complained of. Excessive rainfall during the times when the greatest damages were alleged to have occurred is not denied.

For the reasons above stated, the judgment is reversed and the cause remanded for a new trial.

WELCH, GIBSON, JOHNSON, and BINGAMAN, JJ., concur.