Walter H. RUNYAN and Sallie Runyan, his wife, Plaintiffs in Error,

v.

CITY OF HENRYETTA, Okmulgee County, Oklahoma, a Municipal Corporation, Defendant in Error.

No. 38525.

Supreme Court of Oklahoma.

Dec. 15, 1959.

Harry D. Pitchford, Okmulgee, for plaintiffs in error.

Ernest W. Smith, Henryetta, for defendant in error.

WILLIAMS, Vice Chief Justice.

Plaintiffs in error, referred to hereinafter as plaintiffs, sued the City of Henryetta, referred to herein as defendant. The court, on trial, sustained a demurrer to plaintiffs' evidence. Plaintiffs appeal from such adverse judgment.

The City of Henryetta constructed a reservoir on Wolf Creek, a meandering intermittent stream, for its water supply. In connection with the purification of this water, the city uses four settling basins below or near the dam. Water in these basins is treated with aluminum sulphate and hydrated line. These chemicals, used in large quantities, cause the solids in the water to settle to the bottom of the basins.

The silt so deposited is permitted to accumulate to a depth of some three to five or six feet and then cleaned out periodically, perhaps twice a year in flood time.

In 1949 the city constructed a drainpipe from the settling basins to a point in Wolf Creek approximately 1900 feet below these basins. The silt from these basins is carried off through this drainpipe.

In addition to water used in cleaning the basins, the city permits about 250,000 gallons of water a day to pass through a leak in the dam, which water is also diverted to the drainpipe. About 40,000 gallons of water used in cleaning two of the four filters is also returned to Wolf Creek each day through the drainpipe. A total of about 300,000 gallons of water per day is passed on down Wolf Creek through the drainpipe in addition to the silt and mud flushed out of the settling basins about twice per year. The drainpipe discharges into Wolf Creek approximately 100 feet from and above plaintiffs' property.

Plaintiffs alleged that the silt so discharged by defendant's operations has accumulated in low places or holes in the creek as it crosses their land, causing excessive solids in the water, and resulted in boggy places or quagmires. That four head of their cattle during the years 1954 and 1955 became mired in these bogs and died; and that because of the excessive solid matter in the water it is necessary to drive their stock to a well for water.

Plaintiffs also alleged that defendant has diverted a spring immediately below the dam into the drainpipe. That such diversion has caused the creek bed on their property to dry up, and by reason thereof they have to drive other stock to a well for water.

Apparently, although there is no definite evidence as to the course of this creek, the creek bed runs from defendant's property onto plaintiffs' property (from which portion plaintiffs allege spring water has been diverted) then back onto defendant's property (at which point the long drainpipe discharges its flow into the creek) and then the creek re-enters plaintiffs' land (which is the portion plaintiffs contend has been filled up with sludge and silt from defendant's operations of the settling basins).

Plaintiff Runyan and witnesses on his behalf testified as to the boggy condition of the creek on plaintiffs' land, and as to the loss of cattle. There was no evidence, however, that such boggy condition of this creek did not exist along other portions of the creek, but occurred solely on plaintiffs' land as a result of discharge from this drainpipe. A chemist testified that the discharged water of the drainpipe contained 15.34 per cent solids. No evidence as to a chemical analysis was introduced to show the existence in such silt of any amount of the chemicals added to the water by defendant. Other testimony tended to show that solids in water in excess of 1.5 per cent is injurious to cattle. Plaintiffs' witness, on cross examination, stated that a great per cent of the added chemicals remained in solution in the water pumped through the mains for consumption. Nor was there any evidence that the silt discharged into the creek differed materially from silt normally deposited in such streams by natural erosion.

As to the diversion of waters from a spring which fed this creek, plaintiff testified that said spring was located a short distance below defendant's dam, and that defendant, through its operation of the water works system had filled up the mouth of the spring, and had constructed a short drain from this spring to the long drainpipe discussed above, thus diverting such spring water from the original creek bed.

■ A demurrer to the evidence admits every fact which the evidence tends to prove, and such conclusions as may be reasonably drawn therefrom. If there is conflicting evidence, that which is unfavorable to the party against whom the demurrer is directed is to be considered withdrawn. Carter v. Pinkerton, 194 Okl. 34, 146 P.2d 842.

Although, in view of our previous decisions in cases between these same parties

on this subject matter, City of Henryetta v. Runyan, 203 Okl. 153, 155, 219 P.2d 220; Id., 207 Okl. 300, 249 P.2d 425; Id., Okl., 280 P.2d 712, the plaintiffs' evidence as to the discharge of silt and sediment in the creek may not be sufficient to establish a prima facie case, as to each element of plaintiffs' claimed damages, plaintiffs have sought recovery on each of four claims, not separately stated and denominated as different causes of action. The trial court sustained a general demurrer to plaintiffs' evidence.

■ In Local Federal Savings & Loan Ass'n of Oklahoma City v. Sickles, 196 Okl. 395, 165 P.2d 328, 329, we held:

"Where the plaintiff in a civil action seeks relief in two or more causes and the evidence is such as to entitle the plaintiff to relief in one case and is insufficient to support relief as to the other causes, it is not error to overrule a general demurrer of defendant to plaintiff's evidence."

See also 88 C.J.S. Trial § 235c, p. 541.

In Coleman v. Bennett, 111 Tenn. 705, 69 S.W. 734, the Supreme Court of Tennessee in effect held that where several grounds of negligence are pleaded and evidence is offered in support of each, a general demurrer is properly refused if a case is made for the jury on any one of the grounds alleged.

In arriving at this conclusion, that court said, at page 734 of 69 S.W.:

"The suit being for damages to crops as well as to land, and there being evidence as to the extent of the injury to the crops, a demurrer will not lie to the evidence because there was no proof of the amount of injury to the land."

■ We conclude that plaintiffs' evidence in the trial below, when considered for the purpose of ruling on the demurrer, tended to show that plaintiffs were entitled to recover on one or more elements of damage. Therefore such evidence was sufficient to warrant submission to the jury of at least part of plaintiffs' claims.

Reversed and remanded with directions to grant plaintiffs a new trial.

DAVISON, C. J., and WELCH, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.