## Louisville & Nashville Railroad Company v. Jones.

(Decided January 10, 1928.)

Appeal from Lincoln Circuit Court.

1. Damages.—Determination of amount of damages caused farmer by fire from engine sparks burning trees and seeded land, making reseeding necessary, and resulting in washing of fields, held question for jury.

2. Appeal and Error.—Where there is substantial evidence to uphold jury's verdict, court will not substitute its judgment for the judgment of a jury in arriving at a decision on questions of fact.

3. Damages.—Verdict of $2,500 to farmer against railroad for damages to 140-acre tract, caused from sparks burning seeded land and walnut trees, which made it necessary to reseed, and which caused washing of land by reason of killing of grass roots, held not excessive.

4. Appeal and Error.—While instruction should be clear and as concise as possible, case will not be reversed because of technical errors in instructions, if words used in sentences and arrangement of sentences, clauses, and phrases are such that jury of ordinary intelligence can understand issues without probability of misinterpretation.

5. Damages.—Cost to farmer of reseeding land on account of destruction of grass roots by fire from engine sparks held proper item of damages in landowner's action against railroad company.

6. Damages.—Where grass roots on farm land were destroyed by fire set by sparks from locomotive, landowner, in action against railroad, was entitled to recover as element of damages fair rental value of burned over pasture from day of fire until such time as grass could with reasonable diligence be restored.

7. Damages.—In landowner's action against railroad company for damages to pasture destroyed by reason of fire set by locomotive sparks, instruction permitting recovery of fair rental value of pasture until grass be restored to condition in which it was just before the fire held not erroneous as misleading jury to believe that restoration of grass might be delayed.

8. Damages.—Instruction, in landowner's action against railroad for fire set by locomotive sparks, permitting recovery of damages by landowner on account of washing of soil after fire burning pasture land, where washing was direct and proximate result of fire, held not erroneous for failure to limit recovery to washing which occurred between time of fire and plowing of land.

9. Damages.—Depreciation in value of land, caused by washing as result of fire burning grass roots, relates to fair and reasonable market value, and should be so defined by instructions.

10. Appeal and Error.—Instruction permitting landowner's recovery of depreciation in value of land caused by washing, which occurred as result of fire set by locomotive sparks, though technically erroneous for failure to refer to fair and reasonable market value, held not prejudicial in landowner's action against railroad, where evidence disclosed no other standard of value.

11. Appeal and Error.—Instruction permitting recovery of difference between value of injured walnut and fruit trees before and after fire set by locomotive sparks, though technically erroneous for failure to limit recovery to difference in market value, held not prejudicial, where damage to trees was relatively small, and instruction requested by appellant did not confine recovery to market value.

12. Appeal and Error.—Party may not ask for instruction on a particular point and thereafter complain, if the court gave the instruction substantially asked for.

13. Appeal and Error.—In action by landowner for damages for fire set by locomotive sparks, which caused burned-over lands to wash,

testimony of plaintiff that land was bare of vegetation, and rich dirt was washed away by winter rains, ruining fields, though applying to time after land had been plowed, held not prejudicial, in view of instructon limiting recovery to washing, which was direct and proximate result of fire.

14. Evidence.—In landowner's action against railroad for damages for setting fire to his fields, causing burning of grass roots, and subsequent washing away of land, testimony of farmers as to effect of burning of grass on probability of washing held competent, though witnesses had not actually been on plaintiff's lands.

15. Evidence.—Lay witnesses held competent to testify as to extent of damage done walnut trees in rural community as result of fire set by locomotive sparks.

16. Appeal and Error.—Court should not reverse case unless from a consideration of the entire record it appears errors were committed prejudicial to substantial rights of complaining party.

WOODWARD, WARFIELD & HOBSON and K. S. ALCORN for appellant.

C. C. BAGBY, E. C. NEWLIN, JR., NELSON RODES and J. S. OWSLEY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellee instituted an action in the Lincoln circuit court wherein he sought to recover from appellant the money value of damages done to his property by reason of a fire which started on the right of way of appellant and extended into the fields of appellee, and burned over a large acreage. It is alleged that the fire was started by the negligence of appellant in the operation of its trains in causing and permitting sparks and cinders to escape, and in suffering its right of way to become filthy by permitting grass and weeds to grow on it. The appellant traversed the allegations of the petition. The evidence disclosed that appellee owned a farm of about 234 acres lying in Lincoln county on the highway running from Stanford to Shelby City. Included in the farm are two fields, with an approximate acreage of 140. These two fields were the scene of the fire. They adjoin, and the larger field contains 110 acres abutting on the north on the right of way of the appellant. South of the 110-acre field is another field of 30 acres which borders on the Stanford and Shelby City pike. There were no buildings on either field at the time of the fire.

The fire occurred August 25, 1925. There had been a long spell of dry weather. A colored boy testified that he was close to the railroad tracks adjoining the lands of

appellee when a passenger train passed in the morning of the day of the fire about an hour before noon. Soon after this train passed this colored boy, playing on the tracks, noticed that the bank on either side of the railroad was afire. He testified that the fire passed on to the land of appellee. A colored man testified that he saw the passenger train pass that morning, and soon thereafter noticed that appellee's field was on fire. The right of way where the fire started had blue grass on it as well as weeds. The grass and weeds had become seared as the result of the long drought.

At the time of the fire appellee had cut the hay from the 30-acre field, and had removed it from the land. He had cut a part of the hay from the 110-acre field, and moved it from the land. The part so cut and removed covered about 25 acres. He had left standing about 25 acres partly of orchard grass, with some clover and weeds. He had cut the hay on the remainder of the 110-acre tract, and left it lying on the ground, because it was of little value for hay, and testified that he left it in windrows for the purpose of mulching the ground. He also testified that it was his intention to cut the remaining 25 acres and leave the crop on the ground. The fields burned over had been sowed in yellow and white sweet clovers, orchard grass, timothy, lespedeza grass, and some blue grass.

Appellee attempted to establish by the witnesses who testified in his behalf four separate items of damage. His evidence showed that the fire killed the grass and destroyed the roots, thereby making it necessary for him to reseed the fields.

He and his witnesses testified that, after the fire, the fields washed badly, and that many small gullies were caused by reason of the rains falling on the naked ground after the grass had been killed. He also testified that the surface of the fields washed without leaving any trace, or, rather, without leaving any visible marks in the nature of ravines or gullies.

There were walnut trees standing in these two fields at the time of the fire. There were about 100 of them. They were large trees of that species. Appellee and his witnesses testified that these walnut trees were seriously damaged.

Appellee and his witnesses testified that the wire fence between the road and the south field was damaged

by the fire by reason of a number of posts having been burned off.

The jury found for appellee in the sum of $2,500.00. Appellant attacks the verdict as being flagrantly excessive. The evidence is voluminous. If the jury believed the evidence offered by appellee, it could have returned a much larger verdict. It appears that the jury trimmed down considerably the estimates of damages offered by appellee and his witnesses. It was for the jury to determine the amount of the damages, and, where there is substantial evidence to uphold the verdict, this court will not substitute its judgment for the judgment of a jury in arriving at a decision on questions of fact.

The appellant directs its attack largely at the instructions given by the trial court, and particularly does it complain about the measure of damage instruction. That instruction was in this language:

"If you find for the plaintiff, Jones, you will find for him in damages the cost of reseeding the land upon which you may believe from the evidence the stand of grass was destroyed by the fire of August 25, 1925, and also the fair rental value of the pasture that was destroyed from the day of the fire until the said grass could be restored to the condition in which it was just before the fire, and, if you further believe from the evidence that any damage was caused to plaintiff's land by reason of any washing of the soil after the fire, which washing was the direct and proximate result of the fire, then you will find for the plaintiff the depreciation in the value of the land, if any, caused by such washing, and you will also find for the plaintiff the amount of money that represents the difference between the value of the walnut trees and fruit trees burned, if any, just before the fire, and their value just after the fire, and you will also find for the plaintiff the cost of restoring his fences that were burned to the condition they were in just before the fire, your whole finding under this entire instruction not to exceed the sum of $10,000, the amount claimed in the petition."

Numerous objections are offered to this instruction by appellant. Instructions should be clear and as concise as they may be reasonably stated. It is easy to find more apt words or phrases than those used in any instruction

after the trial has been completed, and the parties through their counsel have an opportunity to search for possible defects. If the words used in the sentences and the arrangements of the sentences, clauses, and phrases are such as present the issue so that a jury of ordinary intelligence can understand the issues to be decided from the advice found in the instructions without probability of the jury misunderstanding the issues from the language used, a case should not be reversed because of technical or possible errors in the instructions.

It is urged that the instruction as given allowed a recovery for the cost of reseeding the land. This is in accordance with the measure of damage established in such cases in the case of Illinois Cent. R. Co. v. Doss, 137 Ky. 659, 126 S. W. 349. It is urged that the instruction is erroneous because it permitted a recovery for the rental value of the pasture until the grass could be restored as it was before the fire. Counsel for appellant cite in their brief 17 C. J. 893. It is there stated that, where the grass roots are destroyed, the measure of damage is the diminution of the value of the land, or such an amount as will compensate for the injury done to the turf and roots, taking into consideration the purpose to which the owner was appropriating, or desired to appropriate, the land, or to which it was adopted. But it is there said there is another line of authorities holding that the measure of damage is the cost of restoration, together with the rental value of the land during the time required. It is argued that the instruction quoted above was susceptible of the meaning that appellee was entitled to recover the rental value of the land until he had restored the fields to their former state, although he might delay the restoration while he was cultivating other crops. We do not think the instruction measured by the rule above announced should be so construed. Appellee was allowed to recover the fair rental value of the pasture that was destroyed from the day of the fire "until the said grass could be restored to the condition in which it was just before the fire." The instruction did not allow the jury to award the fair rental value of the fields until the grass "would" be restored, but until it "could" be restored, and we do not believe that the jury was misled by the language used. It was sufficiently clear to lead the jury to believe that they were only allowed to award the fair rental value of the pasture until the grass could be re-

stored, and to the mind of an ordinarily intelligent man that would mean until the grass could be restored, if the restoration should be commenced and prosecuted with due diligence. The word "could" should be given no other construction as used in the instruction complained of.

Another alleged error in the instruction is that it failed to limit the recovery as to washing to such washing as may have occurred before appellee plowed the land. We do not think this point is well taken. The instruction confines the damage caused by the washing to such washing as was the direct and proximate result of the fire. If the washing was caused by the plowing, it was not the direct and proximate result of the fire, and this the jury could easily understand from the language used in the instruction.

It is next urged that the standard for measuring the damages caused by the washing of the land should have been, not simply the depreciation in value as the instruction puts it, but the depreciation in the fair and reasonable market value of the land. If the court had used the language "depreciation in the fair and reasonable market value of the land," the instruction would have been improved, or, if the court had confined the recovery on this point to the reasonable cost of restoring the fields to the condition they were before they were washed, in so far as the washing had changed their condition, it would have been more nearly correct. But we are not willing to say, in the light of all the facts disclosed by this record, that the technical error complained of was prejudicial to the rights of the appellant. The market value of the land is the only value it had so far as the evidence disclosed, and, if there was no depreciation except such as affected the market value of the land, the jury could find no depreciation other than in the market value of the land.

The instruction on the measure of damage as to the injury to the walnut trees and fruit trees damaged did not confine the recovery to the difference in their market value just before the fire and just after the fire, and undoubtedly the instruction should have been so limited, and the court should have confined the measure of damage to the difference in market value instead of the difference in value. The proven damage to the walnut trees and fruit trees was small in comparison with the whole damage, and it might well be said that this error

was not prejudicial. But there is another reason why appellant cannot avail itself of this error, and that is that it offered an instruction which was refused by the court, which instruction did not confine the recovery on this point to the difference in the fair and reasonable market value just before the fire and just after the fire. A party may not ask an instruction on a particular point and thereafter complain, if the court gave the instruction substantially asked for.

Certain objections were made to the evidence, and these objections are pointed out in the brief filed in behalf of appellant. In nearly every instance the objection is based on grounds more imaginary than real. In answering a question as to the effect of winter rains on the burned-over land, the appellee testified that it was bare of any vegetation, and the hills washed down, and he saw them go down there all winter long, and that he had to watch and face it coming over hills, washing the black, moldy, rich dirt ruining his fields. The first objection to this is that the question did not confine his answer to the washing of the land before it was plowed, but the instruction given by the court confined the jury to allowing damages from the washing which was the direct and approximate result of the fire. Besides that, we are not willing to say that the destruction of the roots of the grass, if they were destroyed, would not have accelerated the washing, even after the plowing was done. The statement of the witness that he saw the black, moldy, rich dirt going down from the hills on fields was irrelevant, but not prejudicial in any sense of the word. There are other objections aimed at the evidence along this line, but a consideration of the evidence convinces us that, although it may have been irrelevant in some instances, and probably incompetent in other instances, still we cannot say that it was prejudicial. It is also urged that some of the witnesses who testified as to the probabilities of the land's washing after the grass had been burned were not sufficiently familiar with the land to express an opinion. Farmers generally know the condition of the land in the neighborhood where they live, and the fact that these witnesses had not actually been upon the lands of appellee more than a time or two does not mean that they did not have a knowledge as to the effect of burning the grass off of the land as it related to the probability of its washing thereafter.

Objection is also made to some of the testimony relating to the damage to the walnut trees on the ground that it is not shown that the witness had sufficient experience to know to what extent the walnut trees had been damaged by the fire. A layman may testify about a matter of that kind. The burning of trees is such a common occurrence in the rural communities that it does not require any particular kind of expert knowledge to enable a witness to fairly judge what will be the result of the burning.

The court should not reverse a cause, unless from a consideration of the entire record it appears there were errors on the trial prejudicial to the substantial rights of the party complaining. We find no prejudicial error in this record.

Judgment affirmed.