CHICAGO, R. I. & P. R. CO.
v. TURNER.

No. 34855.  April 23, 1952.

*243 P. 2d 673.*

Savage, Gibson, Benefield & Hart, Oklahoma City, for plaintiff in error.

A. Francis Porta and Joseph P. Weaver, El Reno, for defendant in error.

CORN, J.  Plaintiff sued to recover damages for the value of growing crops allegedly lost by reason of defendant's negligent construction and maintenance of its railroad across his land, thereby preventing the natural drainage of the surface water and thus causing damages for which plaintiff sought recovery.

The pertinent facts may be summarized as follows:  Plaintiff owned 80 acres of land in Canadian county, traversed from northwest to southeast by defendant's railroad. Seventy-two acres of the land had been planted to alfalfa, a perennial crop, and 1½ acres to wheat. In 1949, the year involved, the alfalfa land had been rented for one-half the alfalfa and seed, free of all expense.

Defendant's roadbed and track were constructed across plaintiff's land from a point on the north line to a point on the east line, the roadbed being higher than the plaintiff's land.  The topography of the land ascends to the north and east, the natural drainage being from north and west to south and east. During periods of ordinary rainfall the accumulated water flows east and southeast across the land in a well defined water course.  Prior to construction of defendant's roadbed water drained to southeast and off his land.  However, when the railroad was constructed there was a failure to provide sufficient outlets to accommodate water which accumulated and flowed in the natural water course, resulting in the water backing up and overflowing plaintiff's land.

Early in May, 1949, heavy rainfall in the general vicinity drained from the

uplands onto plaintiff's land, accumulated and flowed into the natural water course in a southeast direction until it reached the defendant's railroad. By reason of the negligent construction, failure and refusal to maintain proper openings in the roadbed permitting the flowing water to drain away, the accumulated water backed up and overflowed plaintiff's land, thereby destroying the 72 acres of alfalfa, as well as the roots thereof, and the 1½ acres of wheat growing upon the land.

Plaintiff testified that, had the growing crops not been destroyed by the impounded water, the 72 acres would have produced two tons of alfalfa per acre, valued at $20 per ton, or a total value of $2,280, one-half of which belonged to plaintiff. The cost of reseeding the alfalfa land would be $15 per acre, or $1,080; the value of the wheat crop destroyed was $45. The total damages sought by plaintiff were $2,565.

Following a pre-trial conference (April 1, 1950) plaintiff amended his petition to allege, in addition to the damages heretofore enumerated, a further item of damages for reduction in the value of the land resulting from the flood in the amount of $1,500 and asked judgment in the total sum of $2,985.

To establish the difference in value of the land after the flood, compared to the value before such time, plaintiff introduced the evidence of a real estate broker. After being properly qualified this witness testified that prior to the flood this land had a value of about $22,000, and that after the flood the value decreased $15 per acre.

Defendant's evidence was directed toward showing the roadbed across plaintiff's land had been constructed in a careful and proper manner; that as constructed the roadbed did not divert the water which accumulated upon the property from the natural water course and back it up over plaintiff's land; proper drainage outlets had been constructed to drain the water from the land in the same manner and direction as it drained prior to construction; any diverson of the water from its natural course was the result of continuous cultivation, and did not result from any negligence of defendant.

The question of negligence was submitted to the jury, who resolved this issue in plaintiff's favor. No question is raised by defendant as to the sufficiency of the evidence to sustain such finding. The matters relied upon for reversal are presented under two propositions.

At the trial, upon conclusion of plaintiff's testimony, his attorney requested the court to permit the jury to be taken to the area for the purpose of viewing the premises about which plaintiff had testified. The trial court reserved his ruling upon such request until conclusion of the evidence. The next day, following conclusion of the testimony of a witness for plaintiff, the court discharged the jury under the customary admonition as to their conduct. The following day, at a conference in chambers, defendant moved for a mistrial, upon the ground that without warning, and in the presence of the jury, plaintiff had requested that the jury be taken to view the premises involved, this being prejudicial to defendant and made at a time when defendant could not then object except at the risk of further prejudicing its rights before the jury.

Defendant contends it was placed at a prejudicial disadvantage by reason of such request being made in the jury's presence and without prior warning to the court or opposing counsel. Defendant's argument is that, regardless of the court's ruling, an impression was implanted in the jury's minds that a view of the premises would be helpful.

Defendant argues such request should not be made in the jury's presence because opposing counsel could not object thereto without risk of prejudicing the jury, and where so made the trial court should promptly overrule the request because improperly made. How-

ever, if this is not done then the court should retire the jury upon his own motion before further proceedings regarding such request, and failure to do this constitutes reversible error. Defendant relies upon National Box Co., Appt., v. Charlie Bradley, 171 Miss. 15, 157 So. 91, 95 A. L. R. 1500; Poteete et ux. v. City of Water Valley, 207 Miss. 173, 42 So. 2d 112, in support of the argument made.

In the latter case the request to view the premises was made in the jury's presence before any evidence was introduced. The defendant's objection was overruled and the jury was taken to view the overflowed land. On appeal this was held to be reversible error. The apparent difference makes that case inapplicable to the facts herein disclosed.

Defendant's argument closely follows the discussion in the court's opinion in the Bradley case, supra, wherein the court concluded:

"* * *But in order to constitute reversible error, as regards the matter of procedure, the objecting party must (1) make the request for the retirement of the jury, and (2) he must object to the view. * * * Until the objecting party has requested the retirement of the jury, any previous failures to conform to the rules of practice above stated will be considered as breaches of propriety but not as reversible error."

When plaintiff's request first was made in the jury's presence the court stated it was too early to determine whether it would be proper to view the premises. Such request was not granted and no other proceedings were had concerning the request. At no time did defendant request retirement of the jury before any ruling should be made by the trial court. Under such circumstances, it is impossible to conclude that the jury could have been prejudiced against defendant by the impropriety of making such request in the jury's presence. The trial court properly denied defendant's motion for mistrial.

Defendant further contends the trial court erred in its instruction upon the measure of damages. The instruction (No. 13) given was as follows:

"* * *The measure of damages to the owner of land for the destruction of, or damage to, a perennial crop such as alfalfa is the difference in value of the land with alfalfa growing thereon, immediately prior to such destruction or damage, and the value of the land immediately thereafter without such growing crops thereon. In the event your verdict is in favor of the plaintiff, then in determining the difference, if any in the value of the land, you may take into consideration: the period of time the crop had been planted prior to its damage or destruction; the probable period it would have produced crops thereafter; the probable value of such crops; the condition of the crop at the time of its injury or damage; the probable cost of preparing the soil and re-planting such crop; together with all other facts and conditions then existing in regard to such crop of alfalfa at the time of its alleged damage or destruction.

"In this connection, you are instructed, however, that you are not to consider such various elements concerning the crop of alfalfa as independent items of damage, but are to consider the same only for whatever bearing it may have on the difference in the value of the land immediately prior and immediately following the damage to, or destruction of such crop.

"Your verdict, if any, in favor of the plaintiff for damage or destruction of the alfalfa crop, shall in no event exceed the amount sued for by the plaintiff, in the sum of $2940.00. * * *"

This court has not had occasion to pass upon the question as to the proper measure of damages to be applied in cases of loss arising from destruction of perennial crops. The reported cases are in sharp conflict as to the measure of damages to be applied, and the reason for the rule upon which each case is based. The wide divergence of opinion upon the subject may be observed in the annotation in 175 A. L. R. 214. Also see 17 Am. Jur. Crops, §77.

Although recognizing the conflict, both in rules and reasoning, we believe the sounder rule to be applied in cases where a perennial crop readily may be restored by reseeding, to be the value of any matured crop, plus the cost of reseeding, and the rental value of the land for such period as is reasonably necessary to restore the crop. See Miller & Lux, Inc., v. Pinelli, 84 Cal. App. 42, 257 P. 573; Mattis v. St. Louis & S. F. Ry. Co., 138 Mo. A. 61, 119 S. W. 998; Louisville & N. R. Co. v. Jones, 222 Ky. 531, 1 S. W. 2d 972.

The measure of damages for the destruction of an annual crop, i.e., wheat, is the value of the crop at the time of its destruction. Crow v, Davidson, 186 Okla. 84, 96 P. 2d 70, 126 A. L. R. 123; Franklin Drilling Co. v. Jackson, 202 Okla. 687, 217 P. 2d 816.

Additionally to the evidence concerning the difference in value of plaintiff's farm immediately before, as compared to immediately after the flood, there was other evidence establishing rental value of the land for the remainder of 1949, the cost of reseeding the land, and the value of the wheat crop destroyed by the flood. Plaintiff offered no evidence concerning the time reasonably necessary to restore the crop, nor the reasonable rental value during such period of time.

Neither in the trial of this case, nor in the argument herein presented, did defendant present a requested instruction covering what it conceived to be the proper measure of damage to be applied. Defendant contends that the instruction given was erroneous because it stated the measure of damages was the difference in value of the land before and after the flood, and then set out other elements to be considered in arriving at such value, such as: (1) probable period of productivity; (2) condition at time of injury; (3) cost of replanting. Thus defendant says the instruction is a commingled instruction of the measure of damages for destruction of crops, temporary injury to the farm and permanent injury to real property.

The original petition pleaded plaintiff's measure of damages as follows: rental value of alfalfa land for remainder of the season $1,440; cost of reseeding $1,080; value of wheat crop destroyed $45. The total damages sought amounted to $2,565. These elements of plaintiff's damage were established by undisputed evidence. Plaintiff points out that his original petition pleaded the proper measure of damages, and agrees that the trial court erred in so instructing the jury. However, plaintiff also points out the amendment to the petition which changed the measure of damages was made pursuant to the trial court's order entered subsequent to a pre-trial conference, entered upon defendant's objection that the measure of damages was improperly pleaded. For this reason plaintiff says that defendant should not be permitted to urge the error of the trial court's instruction at this time.

This court only passes upon questions presented by the record, and pre-trial proceedings do not appear in the record. In view of the evidence under the court's instruction upon the measure of damages, by no method of computation could the jury properly have arrived at a verdict greater than the amount ($2,565) to which plaintiff would have been entitled had the court submitted the issue to the jury under an instruction upon the measure of damages which the parties now agree to be correct.

The jury's verdict was for $2,985, which amount is excessive by $420. Under the evidence such excess is subject to accurate calculation. In such circumstances, error in assessment of damages which affects only the amount of the verdict, the amount attributable to the error being subject to calculation, is harmless error and may be corrected by remittitur of the excess amount. Smith et al. v. Ogle, 196 Okla. 295, 164 P. 2d 992; Parker v. Everetts, 196 Okla. 408, 165 P. 2d 630.

Judgment affirmed upon condition that within ten days after receipt of mandate plaintiff file remittitur of $420, otherwise reversed and remanded for new trial.

ARNOLD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.