Riley BLACK, Plaintiff in Error,

v.

E. E. ELLITHORP and Frances M. Ellithorp, Defendants in Error.

No. 39824.

Supreme Court of Oklahoma.

March 12, 1963.

Rehearing Denied May 28, 1963.

24

C. H. Bowie, Pauls Valley, for plaintiff in error.

Fermon Hatcher, Bill Wilson, Sam J. Godwin, W. D. Hart, Pauls Valley, for defendants in error.

JACKSON, Justice.

In the trial court, plaintiffs E. E. and Frances M. Ellithorp sued defendants Riley Black, Gladys Morris, and others for losses resulting from flood damage to their crops, in the total amount of $18,525.00. Demurrers of all defendants to plaintiff's evidence, except Mr. Black and Mrs. Morris, were sustained, and the case went to the jury as to those two defendants only. The jury returned a verdict against Mr. Black only for $2500.00, and he appeals.

From the evidence it appears that plaintiffs' farm is located east of, and adjacent to, a north-south street in Lindsey, Oklahoma, called North Thompson Street. Immediately west of, and adjacent to, said street is a tract of land which was developed as a residential area by defendant Black beginning in 1955, and thereafter annexed to the city of Lindsey, Oklahoma (along with North Thompson Street) in 1956 as Black's Manor Heights Addition. Immediately north of said addition, and west of North Thompson Street, is a small tract owned by defendant Morris.

It further appears that elevations in this area are such that surface water normally drains from the north and northwest to the south and southeast.

For more than thirty years prior to 1955, there had been a "bar ditch" or drainage ditch running north and south along the west side of North Thompson Street, past the properties of Mrs. Morris and Mr. Black. Plaintiffs' evidence, contradicted by defendants, was that it was about seven feet wide at the top, four feet deep, and four feet wide at the bottom. In 1955 or 1956, defendant Black, in the course of the development of Black's Manor Heights Addition, filled in this ditch level with a concrete curb six inches high which he built along the east side of his tract. At that time plaintiffs complained to him that such action would cause water which would normally drain south through the drainage ditch to cross over North Thompson Street onto their farm.

Sometime thereafter, a rock fill was placed in the drainage ditch beginning at the northeast corner of the Morris property, presumably to keep waters draining to the south from spreading onto the Morris' property and standing in the ditch on the east side of that property, as it would probably do because of the fill Black had placed in the drainage ditch immediately to the south.

On May 17, 1957, there was a heavy rain in this area, resulting in flood damage to plaintiffs' crops. The evidence was that when the water draining south hit the rock fill at the northeast corner of the Morris property, it was diverted east across the street, running thence in a south or southeasterly direction over plaintiffs' farm. Soon thereafter this damage suit was filed, resulting in a verdict and judgment for plaintiffs and against defendant Black.

On appeal, Black first argues that there is no evidence of proximate cause, and in this connection invites our attention to the evidence that the diversion of the water occurred at the rock fill at the northeast corner of the Morris property, 240 feet north of Black's Manor Heights Addition. He makes a forceful argument that this rock fill was a new and intervening cause of the injury, and that his action in filling in the

drainage ditch along the east side of his own property merely created a condition which made the damage possible, and was not a proximate cause.

The question presented is whether Mr. Black's activities created a "condition" or whether it was a foreseeable precipitating cause of Mrs. Morris' activities in filling the drainage with rock.

Since it does not appear that any appreciable amount of water, if any, was diverted by Mr. Black's fill (his fill being shielded by Mrs. Morris' fill) and it not appearing that Mr. Black and Mrs. Morris were acting in concert, the plaintiffs' verdict can only be sustained, if at all, on the theory that Mrs. Morris' conduct in making the rock fill was responsive to and precipitated by Mr. Black's fill and its threat of damage to her property. It must further appear before plaintiffs can recover of Mr. Black that Mr. Black might reasonably have anticipated that Mrs. Morris would respond by creating an embankment to protect her property and thus cause injury to others. The general rule of law applicable is well stated in the third paragraph of the syllabus in Oklahoma Natural Gas Co. v. Courtney, 182 Okl. 582, 79 P.2d 235, as follows:

"Where there is an intervening, responsible agency, which directly produces the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events, and according to common experience, then the chain of caus-

ation, extending from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause."

In the cited case we quoted with approval from Kentucky Independent Oil Co. v. Schmitzler, 208 Ky. 507, 271 S.W. 570, 39 A.L.R. 979, as follows:

"Does the fact that a second human actor, not acting in concert with a first human actor, intervenes with a tortious act which begins later in time to a tortious act of the first actor, and which second tortious act is the only force in active motion at the time of the damage, exonerate the first actor from liability? Although the second human actor may be liable, it does not necessarily follow that the first is exonerated. By the decided weight of authority, the first will be liable, if he foresaw or ought to have foreseen the commission of the second's tort. Although the earlier view was that the prior tort-feasor was never liable where a later tort-feasor intervened (see Vicars v. Wilcocke, 8 East 1 [1806]) yet it has gradually come to be admitted that the earlier tort-feasor is liable in cases where the commission of the subsequent unlawful or tortious act and the happening of the damages ought to have been foreseen by him as not unlikely to follow."

Assuming, as the parties apparently have, that Mr. Black had no legal right to close the ditch and cause water to collect on portions of Mrs. Morris' property and to stand in the ditch along the east side of her property, then it is reasonable that Mr. Black might have anticipated a reaction of some type by Mrs. Morris. She might file an injunction suit against Mr. Black, she might construct a fill to protect her property, or she might elect to sue for damages subsequently sustained because of Mr. Black's fill. We pose the question of what action Mrs. Morris might reasonably have been expected to take? Was it unlikely that she

might construct a fill to protect her property? The answers are not found in law books, but in human experience. We have concluded that a jury in Garvin County, through which flows the Washita River, are as well qualified to answer this question as are we. By their verdict they have concluded that Mr. Black might reasonably have anticipated that Mrs. Morris would build a fill. We have been aided in reaching our conclusions by the authorities cited in the briefs of the parties and by the following notes and annotations from ALR: Comment Note.—Foreseeability as an element of negligence and proximate cause, 155 ALR, page 157; Annotation, Intervening criminal act as breaking causal chain, 78 ALR, page 471.

After a careful review of the record in this case, we hold that there was evidence reasonably tending to support the implied finding of the jury that the placing of the rock fill in the drainage ditch along the side of the Morris property might reasonably have been foreseen as a natural and probable consequence of the act of Black, and that it was not an independent act which entirely superseded the original negligence.

It is well settled that in an action of legal cognizance tried to a jury, the verdict and judgment will not be disturbed on appeal if there is any evidence reasonably tending to support the verdict. Healing Waters, Inc., v. McCracken, Okl., 350 P.2d 295.

Defendant's second proposition is that the evidence was insufficient on the question of the measure of damages, and the particular objection is that there was no evidence at all as to the probable cost of transporting the crops to market. He cites authority, with which we agree, for the proposition that this is ordinarily a proper consideration in the computation of damages to growing crops.

However, because of the general verdict in this case, and because the verdict can be justified without reference to the claims for damage to the growing crops, it is unnecessary to consider the effect of this omission here. Plaintiffs' fourth cause of action was for the rental value of the alfalfa land for the year 1958, and there was evidence that such value amounted to $2600.00. There was also evidence that plaintiffs could not plant this land to alfalfa in 1958, because it was necessary to break the land several times in an effort to kill the bermuda grass washed onto the land after the flooding in May, 1957.

In an action for damages for the destruction of a perennial crop, with its roots, such as alfalfa, the rental value of the land for such time as is reasonably necessary to restore the crop is a proper element of damages. Wilcox Oil Co. v. Lawson, Okl., 341 P.2d 591; Chicago, R. I. & P. Ry. Co. v. Turner, 206 Okl. 340, 243 P.2d 673.

Defendant Black argues that plaintiffs are not entitled to recover the rental value of the alfalfa land, because the record shows that it was planted to another crop in 1958. In our view, the record does not support this argument. After cross examining Mr. Ellithorp about the alfalfa land and a small tract in the corner leased to an oil company, defense counsel asked "Did you in '58 grow a crop on any of this *other* land?" (Emphasis supplied.) The ensuing discussion was limited to the "other" land, and did not include the alfalfa land.

Since the verdict may be sustained with reference to the loss of the rental value of the alfalfa lands alone, it is unnecessary to consider the sufficiency of the evidence under the other causes of action.

Plaintiffs' third proposition is to the effect that the proximate cause of the injury was an unprecedented rainfall, an act of God, and he invites our attention to the testimony of various witnesses as to the flood conditions resulting from the rain of May 17, 1957. It was undoubtedly a very heavy rain; official weather reports showed a total rainfall of 7.46 inches on that day. There was other evidence, however, that similar heavy rains and resulting floods occur in that area every few years, the last

**28**

prior one being in 1950. There was also evidence that never before 1957 (while the involved drainage ditch was still open) had plaintiffs' farm been flooded from the northwest.

■ An act of God, such as an unprecedented rainfall and resulting flood, which will excuse from liability, must not only be the proximate cause of the loss, but it must be the sole cause. If, however, the injury is caused by an act of God, commingled with the negligence of the defendant, as an efficient and contributing concurrent cause, and the injury would not have occurred except for such negligence, the defendant will be liable. Stiers v. Mayhall, 207 Okl. 219, 248 P.2d 1047.

■■ We hold that under the evidence in this case, the question of whether the rain of May 17, 1957 was an act of God, and, if so, the question of whether the negligence of defendant commingled and concurred therewith as an efficient and contributing cause of plaintiffs' injury, were properly for the jury. A general verdict on conflicting evidence presumptively includes a finding of all the facts necessary to establish the prevailing party's claim. Johnson v. Jones, 39 Okl. 323, 135 P. 12, 48 L.R.A.,N.S., 547; Union Transportation Co. v. Lamb, 190 Okl. 327, 123 P.2d 660.

■ Defendant Black's last three propositions consist essentially of a reiteration, in connection with the instructions to the jury, of the matter already discussed herein under the first three propositions. The principal objection made is that the court failed to list, in his instructions to the jury, the item of cost of transporting the crops to market. It should perhaps be noted that there is a difference between the *measure* of damages and the *manner of computation or proof thereof*. The court's instruction properly stated the measure of damages; as a matter of fact, it is in language almost identical with the first two paragraphs of the court's syllabus in Chicago, R. I. & P. Ry. Co. v. Turner, 206 Okl. 340, 243 P.2d 673. The measure of damages for the destruction of annual crops is the value of such crops at the time and place of the destruction. If the plaintiffs' evidence does not provide a sufficient basis for the *computation* of such damages (market price, less cost of cultivating, harvesting and transporting to market) the question presented goes to the sufficiency of the evidence, and not to the correctness of the court's instructions.

The judgment of the trial court is affirmed.

BLACKBIRD, C. J., and HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.