**WILCOX OIL COMPANY, a corporation,
Plaintiff in Error,**

v.

**Dave WALTERS and Crissie Walters,
Defendant in Error.**

No. 35561.

Supreme Court of Oklahoma.

May 10, 1955.

which plaintiffs' cattle drank, and with resulting loss and damages to the plaintiffs specified as follows:

| | | |
|---|---|---|
| 1. | Loss of cattle | $1000.00 |
| 2. | Decrease in value of cow | 100.00 |
| 3. | Loss of pasture | 50.00 |
| 4. | Medical bills, medicine and special feeding | 390.00 |
| 5. | Loss of milk | 1000.00 |
| | Total | $2540.00 |

The plaintiffs prayed judgment against the defendant upon their first cause of action in the amount of $2,540.

In the said petition, and under designation of second, third and fourth causes of action, the plaintiffs alleged other and further acts of the defendant as the cause of loss and damage to the plaintiffs in specified amounts, and for a fifth cause of action that all the acts and omissions of the defendant as set forth in the said petition occurred through gross negligence and malice of the defendant. In final paragraph of their petition the plaintiffs prayed for punitive damages in such an amount that together with the actual damages sustained by the plaintiffs should total a sum of $3,000.

At trial at the close of the plaintiff's evidence a demurrer to the evidence was sustained as regards plaintiffs' second, third, fourth and fifth causes of action. The demurrer as directed to the plaintiffs' first cause of action was overruled.

Trial resulted in verdict for the plaintiffs in the amount of $2,540, and judgment was entered in accord with the verdict.

The defendant contends the trial court erred in failing to sustain the defendant's demurrer to plaintiffs' first cause of action for the reason that the facts in pleading give rise to several causes of action.

Attention is directed to allegations of the petition to the effect that the defendant permitted the escape of salt water from its separation tanks to flow over the surface of the plaintiffs' pasture, and that the defendant ran salt water from its pipe line into a stream from which the plaintiffs'

George H. Jennings, Sapulpa, Glenn R. Davis and Horace B. Clay, Tulsa, for plaintiff in error.

Young, Young & Young, Sapulpa, for defendants in error.

## PER CURIAM.

The plaintiffs, in petition, alleged they were conducting farm and dairy operations upon certain leased land during a certain year, and that during the time the defendant was producing, separating and storing oil from and upon said lands, and that the defendant in its operation negligently permitted base sediment, oil, salt water and other poisonous substances to escape from its separation tanks and earthen reservoirs to and upon the plaintiffs' pasture lands and into a stream on the premises and from

cattle drank, and the defendant so constructed an earthen reservoir tank on the edge of a creek that salt water escaped therefrom into the stream and that the defendant placed large amounts of salt water and other poisonous substances from its oil well into an open reservoir and because of a failure to burn or transport the substances from the premises a freshet washed the base sediment over the surface of the plaintiffs' pasture.

It is suggested that all of these allegations refer to separate and distinct acts or omissions on the part of the defendant, and each or any of which, if true, gave rise to a separate cause of action.

Reference is made to 12 O.S.1951 § 266, which provides:

"Where the petition contains more than one cause of action each shall be separately stated and numbered."

Reference is also made to 12 O.S.1951 § 267, which provides:

"The defendant may demur to the petition * * * when it appears on its face * * *:

* * * * * *

"That several causes of action are improperly joined."

12 O.S.1951 § 265 provides:

"The plaintiff may unite several causes of action in the same petition * * * where they all arise out of any one of the following classes:

* * *

"3. Injuries, with or without force, to person and property, or either.

* * *

"But the causes of action so united must all belong to one of these classes, and must affect all the parties to the action, * * *."

Thus, in statute, § 265, supra, joinder of causes of action is authorized in certain circumstances. In the succeeding provision, § 266 supra, the manner of the pleading of several causes of action in the same petition is directed. Section 266 provides a statutory right in favor of the defendant which may be waived by the defendant, and where the petition fails to comply with the statute, and the defendant fails to move for amendment to comply with the same, the right is waived. Gallemore v. Buzzard, 98 Okl. 104, 224 P. 293. Obviously, a demurrer to a petition does not present a question of failure to separately state and number causes of action. The only question presented by the defendant's demurrer was whether or not a cause of action was stated and whether or not several causes of action are improperly joined. It is admitted that several causes of action were stated.

In their petition the plaintiffs alleged negligence of the defendant in several acts or omissions, and that each said act or omission was a cause of injury to the plaintiffs' property. Thus the petition reflects that the several causes of action stated therein all arise out of injuries to the plaintiffs' property and are such as affect all the parties to this action.

Under express provisions of section 265, supra, causes of action arising out of injuries to property, affecting all the parties to the action, may be united in the same petition.

The defendant complains of an opening statement of plaintiffs' counsel not within the issues, and of the conduct of plaintiffs' counsel in asking improper questions during course of the trial.

We have examined the record and note that the trial court was prompt in admonishing the jury to disregard statements of counsel not within the issues, and prompt in sustaining objections, and in admonishing counsel, witnesses, and the jury, concerning improper questions, statements and answers.

It might be said that there was some misconduct of counsel in opening statement and in examination of witnesses, but we are not impressed that the verdict was substantially influenced thereby, or that the defendant suffered prejudice as to be denied a fair trial.

The defendant contends the evidence is insufficient to support the verdict and judg-

ment; that the evidence failed to establish that defendant was negligent in operation of its leasehold, or that defendant's negligence, if any, was the proximate cause of plaintiffs' injury; that the evidence failed to establish damages suffered by the plaintiffs lawfully recoverable from defendant; that the verdict and judgment were excessive.

There was testimony to the effect that during the year involved the plaintiffs operated a dairy on the premises involved under an agricultural lease of the premises. The plaintiffs owned twelve milk cows which grazed on the premises and the plaintiffs received an income from the sale of cream produced by the cows. The defendant maintained an earthen reservoir on the premises in which it stored salt water and other oil well refuse. The reservoir was formed in part by an earthen dam constructed of sandy soil, and salt water seeped through the same from the reservoir and flowed into a creek or natural watercourse on the premises. The defendant also maintained oil separation tanks on the premises and permitted salty water therefrom to flow into the creek or natural watercourse. The plaintiffs' cattle drank from the natural watercourse. Beginning in June the cows became sickened and began rapidly to lose weight and dry up in their production of milk. A veterinarian was called to treat the cows. The veterinarian testified that he had practiced in an oil field area for more than twenty years; that plaintiffs' cows had all the symptoms of salt water poisoning; that he prescribed certain medicines and special feeds for the cows; that the cows were underweight and in such condition as to be capable of but little milk production and were of a physical condition that they would likely abort their calves; that the cows responded to his prescribed treatment only in that they did not die, and that their aforesaid poor physical condition became permanent; that five of the cows aborted calves; that he visited the creek on the premises and observed salt and oil and cow tracks along the banks of the creek; that he tested the water in the creek and found it too salty to be consumed by livestock.

In Sun Oil Co. v. Hoke, 197 Okl. 261, 169 P.2d 753, it was held:

"An operator of an oil and gas leasehold owes a duty to the holder of an agricultural and grazing lease on the same lands not to permit the escape of oil, salt water and other deleterious substances coming from its wells as waste matter to flow, by seepage or otherwise, upon and across the grazing lands so as to poison and pollute the fresh water supply to which the livestock of the surface lessee have access, and where this duty is not performed and by reason thereof injury and damage result to such livestock liability exists to make compensation to their owner for such injury and damage."

In statute 52 O.S.1951 § 296, it is required that all waste of oil and refuse from tanks or wells shall be drained into proper receptacles and be immediately burned or transported from the premises and in no case shall the same, or salt water, be allowed to flow over the surface of the land. The statute is a penal statute, see 52 O.S.1951 § 303. A violation of the statute constitutes negligence and a violation resulting in an injury to another constitutes actionable negligence. Texas Co. v. Belvin, 207 Okl. 549, 251 P.2d 804.

Herein, from the testimony above noted, it appears there was sufficient evidence to authorize a finding that the defendant allowed oil and salt water to escape in violation of the above statute, and with resulting injury to the plaintiffs' cows. However, we find no sufficient evidence to support the judgment in the full amount for which it was entered.

Although there was some evidence to support a conclusion that all twelve of the plaintiffs' cows were injured, and permanently, and so depreciated in value, there was no proof under which damages for permanent injuries could be measured except in the instance of one cow.

In Deep Rock Oil Corp. v. Griffeth, 177 Okl. 208, 58 P.2d 323, it was held:

"Where cattle are damaged and depreciated in value as a result of

drinking water from a polluted stream, the measure of damages is the difference between the reasonable market value of said cattle immediately prior to and subsequent to the injury."

The foregoing rule is here applicable. Herein there was evidence to show the difference between the reasonable market value of one cow immediately prior to and subsequent to injury, and that difference was shown to be $100. Otherwise the only evidence affording a basis of calculation of financial detriment suffered by the plaintiffs rests in testimony concerning expenditures by the plaintiffs in treatment of their sickened cows, and that there was a loss of produce of the animals after they became disabled.

■ In Carter Oil Co. v. Means, 180 Okl. 585, 71 P.2d 705, it was held:

"A property owner seeking to recover damages for injury to real property has the burden of proving every fact essential to establish his cause of action, including the basis upon which a jury may calculate the financial detriment."

The above rule is applicable in the recovery of damage for injury to personal property.

In this connection, according to testimony, before the plaintiffs' cows became sick their production of cream was such that plaintiffs derived an income therefrom in amount of $25 to $30 per month. After the cows became sick the production from said cows was such that plaintiffs derived income therefrom averaging $2.50 per each two weeks. The plaintiffs paid out $80 for veterinary services, and on advice of the veterinarian the plaintiffs bought medicines and special feeds for the cows; the special feed at a cost of $10 per week. From testimony concerning the time the plaintiffs' cows became acutely weakened and their continuing condition thereafter it may reasonably be inferred that the plaintiffs' reduced income and their expenditures for special feeds commenced in June, and continued for the balance of the year.

■ With loss of income calculated at $20 per month for six months and with expenditures for special feeds calculated at $40 per month for six months, and with $80 for veterinary fees, added and with $100 added as the measurable damages for permanent injuries to one cow, it is made to appear that the plaintiffs suffered a pecuniary loss of $540. Such appears to be the maximum of the financial detriment suffered by the plaintiffs that is calculable from the evidence. Accordingly we find the verdict and judgment for the sum of $2,540 is excessive to the extent of $2,000. We find that a recovery of $540 in favor of the plaintiffs and against the defendant is authorized by the evidence.

The defendant asserts error in the statement of the case as given by the court in the instructions to the jury, and error in certain of the instructions given to the jury, as including issues not sustained by evidence.

■ In the circumstances herein, that the judgment on the verdict of the jury is fully susceptible of correction, and must be corrected to exclude all items of damages tendered in pleadings and stated in the instructions, and which were not sustained by the evidence, we do not perceive that the defendant has suffered a substantial prejudice in the instructions given, and, accordingly hold that the errors in the instructions, if any, are rendered harmless.

For the reasons hereinbefore noted, the judgment in favor of the plaintiffs is affirmed for an amount of $540, on condition that plaintiffs file remittitur in the amount of the judgment that was entered which exceeds the sum of $540, otherwise the judgment is reversed for new trial.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.