**W. H. STRICKER, Plaintiff In Error,**

v.

**Lester VAHLDICK, Defendant In Error.**
**No. 36629.**

Supreme Court of Oklahoma.

Dec. 6, 1955.

Rehearing Denied Feb. 14, 1956.

Marvin T. Johnson, Tulsa, for plaintiff in error.

Leslie Webb and Lou Etta Bellamy Dick, Tulsa, for defendant in error.

JACKSON, Justice.

This action is for recovery on an open account allegedly due under an oral contract between Lester Vahldick, as plaintiff, and W. H. Stricker, as defendant. The parties will be given their trial court designations.

The defendant, as plaintiff in error here, presents this appeal on several assignments

of error but we have carefully examined the record and the briefs and have concluded that only one of his assignments has merit. It is to the effect that the trial court did not agree with the verdict of the jury and committed error in not granting a new trial. The solution to the problem lies in the answer to the question of whether the defendant's agent was acting within the scope of his authority in allowing certain items of "storage" appearing in plaintiff's open account.

The facts are that on or about January 1, 1947, one Trippany was an employee of the defendant, Stricker, and was managing one of defendant's stores. Pursuant to instructions from his employer, Trippany visited the plaintiff with reference to manufacturing an article of fishing equipment known as a Fisherman's Widget. The widget is a small article designed to release plugs and other lures caught on under-water objects. A pattern was worked out and molds were obtained. It was agreed by Trippany and the plaintiff that defendant would furnish the materials and that plaintiff would manufacture these articles at $5.10½ per gross. Defendant approved this agreement and plaintiff was notified by defendant's agent, Trippany.

Production was entered into and a considerable quantity of the widgets was manufactured and Trippany would receive the widgets and pay for the cost of manufacturing with money obtained from the defendant. This continued until about December 12, 1949, when Trippany, the agent of defendant, wrote the plaintiff a letter requesting plaintiff to hold up further production since the widgets were not selling. Trippany later took the manufactured widgets and requested plaintiff to send his bill for his services. This was done about January 1, 1950, but the plaintiff received no immediate pay for this last delivery of the widgets.

The record indicates that the defendant was in bad health and spent most of his time out of the city and it was difficult for Trippany to get in touch with him. Trippany was unable to obtain any money from defendant for the payment of plaintiff's bill and finally on November 5, 1950, authorized plaintiff to sell sufficient stock to pay plaintiff's claim. This was not done. However, plaintiff did appropriate some of defendant's lead and allow credit therefor.

While the date is not shown, plaintiff testified he called the defendant by phone. His testimony in this connection is: "I called him on the phone and he told me to send statements." Later in his direct testimony he was asked if he ever had a conversation with defendant in relation to his accounts at any time. He then stated: "That one time I called him and he told me to contact Trippany—that Trippany was running the deal." This is the only direct communication that plaintiff ever had with the defendant.

Plaintiff further testified that thereafter he talked with Trippany and Trippany authorized him to charge $15 per month as storage on a barrel of wire and chain which belonged to defendant and was on hand at the time manufacturing was stopped. This barrel is described by plaintiff as being from 20 to 24 inches in diameter and about the height of a court room desk. It is located in the corner of plaintiff's shop where plaintiff has articles of his own stored on top of it.

Plaintiff's account was offered in evidence as Plaintiff's Exhibit No. 6. It shows that on February 24, 1951, plaintiff acknowledges receipt of a check for $164.86, leaving a balance, as shown in the account, of $63.91. Thereafter follow entries for storage at $15 per month to begin January 1, 1950, and ending December 31, 1951, totaling $360. Interest charges at 6% are added.

Plaintiff's total claim and the amount sued for is $406.93. He testified that Trippany agreed that this was the correct amount.

Trippany disputes this, and testifies that he understood that the check of $164.86 on February 24, 1951, was in full settlement of plaintiff's account. He further testified that nothing was ever said to him about storage until he delivered this check and it was then that plaintiff said he was going to charge storage on the materials left on hand at the end of the manufacturing pe-

riod. That he, Trippany, asked plaintiff for these materials at that time but that plaintiff refused to let Trippany have them.

■ From the foregoing it will be observed that this whole transaction was handled by defendant's agent, Trippany. There is no testimony as to the extent of Trippany's authority except as shown herein or which may be inferred. When manufacturing ceased the relationship of the parties was over except to pay plaintiff for services rendered and to pick up such materials as plaintiff had on hand which belonged to the defendant. The testimony shows that defendant directed plaintiff to contact Trippany—that Trippany was running the deal. We see nothing in this other than recognition that Trippany had been handling the transaction and was probably more familiar with the amount due than was the defendant. The plaintiff had been in possession of materials furnished by defendant from the inception of this contract and nothing was ever said about a charge for storage during production. Storage charges were not a part of the contract, and it cannot now be inferred that Trippany had the authority to authorize a charge for storage. The fact that "Trippany was running the deal" and that plaintiff should "contact Trippany." would not authorize Trippany to allow or agree upon an amount for storage. Such authority cannot be inferred from defendant's telephone conversation or the nature of the relationship and contract involved herein. We hold that the item of $360 for storage should not have gone to the jury as a part of the account. The jury returned a verdict in favor of plaintiff for $406.03, the amount sued for, which includes the item for storage with interest thereon.

In defendant's motion for new trial he alleged, among other things, that: (1) the verdict and judgment is not sustained by the evidence and is contrary to law; (8) any purported agreement alleged by the plaintiff to pay rent was beyond the authority of any agent of this defendant.

In the order overruling defendant's motion for new trial the trial court incorporated the following statement and conclusion:

" 'That the court was surprised at the verdict and if this court had been on the jury it would not have signed the verdict but the court does not feel that it was such as to shock the conscience of the court' and the court therefore finds that the motion for new trial should be and the same is hereby overruled."

In defendant's fifth assignment of error he states that the trial court did not agree with the verdict of the jury and committed error in not granting a new trial. In support of this proposition our attention is invited to Hennessey Oil & Gas Co. v. Neely, 62 Okl. 101, 162 P. 214, wherein this court said in the first paragraph of the syllabus:

"In passing on a motion for a new trial, in which motion the verdict of the jury is challenged upon the ground that it is not supported by the evidence in the case, it is the duty of the court to weigh the evidence and determine its effect, and if the verdict is one which he cannot conscientiously approve, and he believes it should have been for the opposite party, it is his duty to set it aside and grant a new trial."

In the case now before us it is clear that the agent, Trippany, was unauthorized to allow the item of storage in the sum of $360. We think the verdict for storage in the sum of $360 under the evidence in this case is shocking to the conscience of the court. While we make no decision thereon, it may be that plaintiff would be entitled to a reasonable storage charge under the facts in this case. But if so, plaintiff was not authorized to make an arbitrary charge, and Trippany, the agent, was not authorized to allow any charge. No attempt was made to show that the amount charged was reasonable.

■ Courts should not without reason apply the conscience rule to justify granting a new trial, but where it is amply demonstrated by the record that there is no competent evidence to support a substantial portion of the verdict appropriate action should be taken to correct it.

■ The verdict herein is excessive to the extent of $360, together with such in-

terest thereon as was allowed by the jury. In Gilkeson v. Callahan, 62 Okl. 45, 161 P. 789, this court held in the third paragraph of the syllabus:

"In an action for damages, where it clearly appears that the court rendered judgment for an excessive amount and the amount of the excess can be ascertained from the record, the cause will not be reversed on account of such error, provided a remittitur for the excess is filed, and when filed the judgment may be affirmed for the correct amount."

If defendant in error (plaintiff in the trial court) in 15 days after mandate is filed in the trial court, will file a remittitur of $360, together with such sum as was allowed for interest thereon, the judgment will be affirmed. If the remittitur is not filed within the time allowed, the cause will stand reversed and remanded for a new trial. Southern Kansas Stage Lines Co. v. Crain, 185 Okl. 1, 89 P.2d 968.

JOHNSON, C. J., WILLIAMS, V. C. J. and WELCH, HALLEY, BLACKBIRD and HUNT, JJ., concur.

CORN, J., dissents.