MIKEL DRILLING COMPANY, a corporation, and Kidd Williams Drilling Company, a corporation, Plaintiffs in Error,

v.

Floyd M. DUNKIN, Defendant in Error.

No. 37099.

Supreme Court of Oklahoma.

Oct. 1, 1957.

Rehearing Denied Nov. 6, 1957.

Doyle Watson, Drumright, for plaintiffs in error.

Young, Young & Young, Sapulpa, for defendant in error.

JACKSON, Justice.

This action arises out of alleged injuries to plaintiff's crops and cattle resulting from defendants' oil mining operations. The parties will be given their trial court designations.

On January 1, 1953, plaintiff, Floyd M. Dunkin, acquired a three year agricultural lease on approximately 240 acres of land in Creek County, Oklahoma. Thereafter and during the month of April, 1953, the defendants, Mikel Drilling Company and Kidd Williams Drilling Company, acquired oil and gas leases on a portion of the 240 acres.

Plaintiff alleged in his petition that in May, 1953, the defendants commenced drilling operations on plaintiff's cropland; that they cut his fences and left the gates down allowing plaintiff's cattle to eat and destroy 83 acres of rye and vetch. In a second cause of action he sought damages for two steers which allegedly strayed away and were lost. In his third cause of action plaintiff sought damages for the time and expense incurred in looking after his cattle and in his fourth cause of action he claims damages for alleged injuries re-sulting from his cattle drinking oil and salt water that had flowed over and across the surface of plaintiff's land. Each and all of these causes of action sounded exclusively in tort, based upon acts and conduct of the defendants allegedly constituting negligence.

Defendant, Kidd Williams Drilling Company, answered by way of general denial. Mikel Drilling Company answered by way of general and specific denials to each of plaintiff's allegations and also alleged that if plaintiff suffered any damages that such damages resulted from plaintiff's own negligence and was not the fault of the defendant.

From a jury verdict and judgment in favor of plaintiff on plaintiff's first, third and fourth causes of action in the total sum of $2,616.43, the defendants have appealed.

█ █ Defendants first complain of misconduct of plaintiff's counsel during the voir dire examination of the jury. Defendants' corporate officials were not present in court during the selection of the jury and plaintiff's counsel persistently sought the aid of the court to bring them in so the prospective jurors might know if they had ever been associated with them in any manner, especially in oil and gas leasing activities. They had not been subpoenaed by either party. The court declined to have defendants' officials brought into court.

Further complaint is made that plaintiff's counsel explained to the prospective jurors that "corporations are entities that are fictitious; not people."

█ The trial court immediately instructed the jury that a corporation should neither be helped nor harmed because it is a corporation, and that the fact that the defendants were corporations had nothing to do with the question of who should prevail.

We have carefully examined the voir dire examination conducted by plaintiff's counsel. Counsel was unduly persistent in his effort to obtain the presence of defendants' officials in aid of his voir dire and

was admonished. In view of the court's admonition to the jury and to plaintiff's counsel we are unable to say that defendants were prejudiced.

It is seriously contended that the trial court erred in overruling defendants' separate motions for continuance because of alleged surprise occasioned by plaintiff shifting the theory upon which he sought recovery from one of tort to one of contract, during the course of the trial. Under this proposition the trial court's instructions upon the theory of contract is also attacked.

Defendants contend that this change of theory for recovery from tort to contract did not appear until the trial was well into the third day. They further contend that this change in theory prevented them from showing that plaintiff's damages were caused by plaintiff's own misdeeds and negligence.

We have carefully examined the record and find that in plaintiff's opening statement it was asserted that plaintiff would prove that the defendants had entered into a contract wherein they agreed they would split or divide the surface damage that might result.

On the first day of trial plaintiff called the County Clerk as his first witness. This witness identified plaintiff's exhibits 1, 2, 3 and 4. They were introduced without objection. Exhibit 1 is a letter contract wherein the defendants agreed to share the cost of all surface damages. Exhibits 2 and 3 are oil and gas leases in favor of the Mikel Drilling Company. Exhibit 4 is an oil and gas lease in favor of Kidd Williams Drilling Company. Each of these oil and gas leases provide that "lessee shall pay for all damages caused by its operations to growing crops on said lands."

This change of theory did not come into complete focus until the third day of the trial when the trial court indicated that he was having some difficulty in writing the instructions in connection with plaintiff's first cause of action for damages to the vetch and rye crop. The trial court then concluded that in view of the clause in the oil and gas leases this first cause of action should be submitted to the jury for damages under the lease contracts. The plaintiff agreed and the defendants moved for a continuance.

In Instruction No. 6 the jury was told that defendants had agreed by contract to pay damages to growing crops occasioned by their operations. In Instruction No. 7 the jury was instructed in substance that if they found that the vetch and rye was injured as a direct and proximate result of defendants' operations then their verdict should be for plaintiff. Defendants were not denied the privilege of presenting their defenses and showing that plaintiff's damages were caused by plaintiff's failure to look after his cattle.

Defendants made no showing that a continuance was necessary to properly present their defense to the theory of recovery on contract. In fact, defendant's liability under the contract is no greater than their liability under existing law. Republic Natural Gas Company v. Melson, Okl., 274 P. 2d 543. In Keener Oil & Gas Co. v. Bushong, 176 Okl. 565, 56 P.2d 819, we held that where an amendment was allowed to make plaintiff's petition conform to the proof that was offered without objection, an order denying a continuance requested by the defendant was not error absent a showing that a continuance was necessary to properly present a defense to the petition as amended. We have also held that the allowing of trial amendments and the refusing or granting of a continuance after such amendments have been made is discretionary with the trial court, and its ruling thereon will not be disturbed by this court absent a clear abuse of discretion. Seidenbach's, Inc., v. Murdock, 180 Okl. 85, 68 P.2d 92.

We conclude that plaintiff's petition was treated as amended to conform to the proof and that there was no error in the trial court's refusal to grant a continuance.

■ Defendants next contend that the court's instruction as to joint and several liability and its judgment approving a ver-

dict for joint liability constitutes reversible error.

The record discloses that all elements necessary to create a mining partnership to develop the oil and gas leases were entered into as between the defendants. They co-operated in developing the leases and exercised joint control and management. By their conduct they created a mining partnership; Robinson Petroleum Co. v. Black, Sivalls and Bryson, Inc., 138 Okl. 128, 280 P. 593.

At the time this controversy arose and was tried, 54 O.S.1951 § 40 provided:

"Every general partner is liable to third persons for all the obligations of the partnership, jointly with his co-partners."

We conclude that the instruction given was a correct statement of the law and contains no error.

■ In defendants' fourth proposition it is asserted that the drilling of the wells was accomplished through an independent contractor, and that since the evidence establishing such fact is undisputed the question of whether an independent contractor relationship existed was a question for the court. We find no merit in this proposition. Defendants' witness, Chambers, testified that he employed Pete Morris Drilling Company to drill the wells on a footage basis, but he also testified that the operations were under the direction and control of each of defendants' presidents. Such was enough to raise a conflict as to whether an independent contractor relationship existed between defendants and Pete Morris Drilling Company.

In defendants' fifth proposition it is contended that the court committed error in permitting evidence of a proposed compromise as between the plaintiff and defendant, Kidd Williams Drilling Company, over the objections of the defendant, Mikel Drilling Company. The testimony was submitted by defendant, Kidd Williams Drilling Company, and admitted over the objections of Mikel Drilling Company, as an admission against interest.

■ Since defendants have presented their appeal by joint assignment of error we find it unnecessary to decide this issue. In Beck v. Day, 178 Okl. 310, 62 P.2d 1014, we held that a joint assignment of error must affect all jointly and not severally as to all who join in it, or it will be good as to none.

■ In defendants' sixth and final proposition it is contended that plaintiff failed to prove all the elements necessary to compute the value of growing crops and therefore the trial court erred in refusing to sustain defendants' motions for directed verdict to the first cause of action. It is argued that there was no evidence of the cost of cultivating, transporting or marketing the rye and vetch, and our attention is invited to Garrett v. Haworth, 183 Okl. 569, 83 P.2d 822.

Plaintiff testified as to the cost of combining rye and vetch; the probable yield per acre of the rye and vetch; the cost of separating the rye seed from the vetch seed after harvest; the market price of rye and vetch seed; the cost of baling the crop after he decided to make a hay crop out of it; the cost of cutting and raking, and the value of the hay per bale. Plaintiff also testified that at the time the crop was damaged nothing remained to be done except harvesting. None of this testimony was contradicted.

Applying the rule in Garrett v. Haworth, supra, as contended for by defendants, we are of the opinion the evidence was sufficient for the jury to correctly compute the amount of damages sustained by plaintiff, and the trial court was correct in overruling defendants' demurrers and motions for directed verdict. However, when the damages are correctly computed we are of the opinion that the damages awarded on plaintiff's first cause of action are excessive in the sum of $212.73.

In plaintiff's first cause of action he prayed for damages in the sum of $2,302.43 for the partial destruction of his vetch and rye crop. The jury allowed the full amount prayed for. The proof shows that plain-

tiff, except for the damages caused by defendants, could have reasonably expected a gross income from vetch and rye seed in the sum of $3,212.10. To harvest the crop, separate the grain, and haul it to market would have cost him $642.40, leaving a net balance or profit of $2,569.70.

However, the proof further shows that when it became apparent that it was not feasible to harvest the rye and vetch as a grain or seed crop it would be feasible to harvest it as a hay crop. Plaintiff harvested 2,400 bales of hay, having a gross value of $1,200. The cost of harvesting amounted to $720, resulting in a proved net profit on the hay of $480.

If we subtract the net recovery on plaintiff's hay crop, $480, from the net loss on his seed crop, $2,569.70, plaintiff was entitled to a verdict of $2,089.70 on his first cause of action.

In accord with the foregoing, the verdict and judgment of the District Court are set aside and reversed, unless within 10 days from the issuance of the mandate herein, plaintiff files a remittitur in said court of $212.73, in which event, the trial court's present judgment will stand affirmed.