Lisa McMANUS, Appellee,

v.

May GOURD, Individually and as Special Administrator of the Estate of Allen Gourd, Sr., Deceased, Appellant,

and

Visteena Spottedhorse and Allen Gourd, Jr., Defendants.

No. 78865.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 15, 1994.

Rehearing Denied March 22, 1994.

K. Clark Phipps and Leigh Reaves, Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, for appellant.

Michael C. Taylor, Michael C. Taylor & Associates, Tulsa, for appellee.

## OPINION

ADAMS, Judge:

Lisa McManus sued May and Allen Gourd, Sr.[1] and the other defendants for injuries she sustained in a collision between her car and a van owned by the Gourds. The trial court submitted three verdict forms which required the jury to assess separately the liability of Gourd (individually and as administrator of the estate of her deceased husband), Allen Gourd, Jr. (the Gourds' adult son) and Visteena Spottedhorse. The jury returned three separate verdicts finding Gourd, Allen Earl Gourd, Jr. (Son), and Spottedhorse each liable to McManus for $10,000 actual damages and $10,000 punitive damages. Concluding the jury intended McManus' total damages to be $30,000 actual and $30,000 punitive damages, the trial court entered judgment for that amount against all the defendants. Only Gourd appeals.

## ISSUES

Gourd raises several points of error in her petition in error, but several of these errors are not addressed in her brief and are treated as waived. *State ex rel. Remy v. City of Norman,* 642 P.2d 219 (Okla.1981). Similarly, Gourd argues the trial court erred in giving Instruction 12 but did not so allege

---

1. Allen Gourd, Sr., died while this action was pending and his estate was substituted as a party.

in her petition in error or her motion for new trial, although she did specifically allege error in Instruction 6. Therefore any error in Instruction 12 has not been preserved for review. *See Greene v. Circle Insurance Company,* 557 P.2d 422 (Okla.1976) and *Horizons, Inc. v. KEO Leasing Co.,* 681 P.2d 757 (Okla.1984).

The remaining issues for our consideration, not necessarily in the order raised by Gourd, are: (1) whether there was sufficient evidence for the jury to conclude there had been a negligent entrustment to the driver involved in the accident; (2) whether giving Instruction 6, which defined what it means to "operate" a motor vehicle, was error; (3) whether the trial court erred in allowing McManus to conform her pleadings to the proof, thereby allegedly creating a "general negligence" claim against Gourd; and (4) whether the trial court erred when it gave three separate verdict forms to the jury and then failed to limit the judgment against Gourd to $10,000 actual and $10,000 punitive damages [2].

## ANALYSIS

On the morning of the day of the accident, McManus was travelling south of Tahlequah on State Highway 62. The Gourds' van failed to yield at a stop sign at the intersection of the highway with Willis Road, and McManus' car struck the side of the van. Spottedhorse and Son were in the van. As to the first issue, Gourd argues the evidence only supports a finding that Spottedhorse was the sole person operating the van at the time of the accident. She also contends there is no evidence to support the conclusion that the Gourds entrusted the van to Spottedhorse. Therefore, she argues, McManus was not entitled to recover on a theory of negligent entrustment. Our task in addressing this issue is to review the evidence, consider it in the light most favorable to McManus, and determine whether the record contains any evidence reasonably tending to support the jury's verdict. *Oklahoma*

*Transportation Co. v. Claiborn,* 434 P.2d 299 (Okla.1967).

Spottedhorse testified that her driver's license was suspended at the time of the accident, that she had been drinking, and that she was sitting in the driver's seat when the car and van collided. However, several times during her testimony Spottedhorse claimed to have no memory of the events surrounding the accident. When Spottedhorse claimed this lack of memory, McManus' counsel offered portions of her deposition testimony into evidence.

In one portion of her deposition testimony, Spottedhorse claimed she tried to bring the van to a stop at the stop sign on Willis Road but Son attempted to wrest control of the van from her by grabbing the steering wheel and placing his foot on the gas pedal. This testimony was consistent with McManus' testimony that she saw the van slow near the stop sign and then suddenly shoot forward and in front of her car.

The jury also heard evidence that Son's license had been suspended at the time of the accident for prior alcohol-related offenses, that he had been drinking with Spottedhorse, and that he was arrested for public drunk at the scene. Son denied trying to take control of the van.

Gourd testified she knew Son had a twenty-year history of alcohol abuse and knew Son had prior driving-while-intoxicated offenses and public drunk convictions. She admitted knowing Son drove the van while his license was under suspension. The jury heard testimony that the Gourds purchased the van a few months before the accident specifically for Son's use and that the Gourds both had ceased driving prior to the purchase of the van. Although Gourd testified she restricted Son's access to an automobile they had previously owned on a single occasion, she admitted neither of the Gourds attempted to restrict Son's use of the van.

Gourd denied that she or her husband had ever given Spottedhorse permission to drive

---

**2.** The verdict forms allowed the damage award, including the punitive damages award, to be entered jointly against May Gourd, individually, and the estate. The improper award of punitive damages against the estate, *see Morriss v. Barton,* 200 Okl. 4, 190 P.2d 451 (1947), is not cited as error and is therefore not addressed.

the van but admitted she knew Spottedhorse had driven Son home "once or twice" or "a few times." Spottedhorse testified such permission had been extended on at least five occasions, and that the Gourds were aware she and other drinking companions of Son drove the van when Son was too inebriated to do so. Spottedhorse's denial that the Gourds had ever given her explicit permission to drive was contradicted by her deposition in which she testified about conversations with May Gourd during which Spottedhorse was told she had permission to drive if Son was too drunk to do so.

█ The jury is the exclusive judge of the witnesses, evidence, and the effect to be given conflicting or inconsistent testimony. *Holley v. Shepard*, 744 P.2d 945 (Okla.1987). Where any evidence reasonably tending to support the jury's verdict appears in the record, that verdict will not be disturbed. *Eversole v. Oklahoma Hospital Founders Association*, 818 P.2d 456 (Okla.1991). If Spottedhorse's testimony is believed, the jury could have concluded that Spottedhorse and Son were both in control of the van at the time of impact, that both Spottedhorse and Son had implicit or explicit permission to operate the van, and that Spottedhorse and Son, acting in concert, were negligent in operating the van, with resulting injury to McManus.

█ Further, the jury could have reasonably concluded that the Gourds' entrustment of the vehicle to Son and his friend, with knowledge of its likely use while the drivers were drinking, was such reckless disregard for the rights of other motorists as to warrant punitive damages. The jury's verdict finding Gourd liable for actual and punitive damages is supported by the evidence.

█ As to the second issue, Gourd argues Instruction 6 did not properly define the term "operate." Instruction 6 reads: "To 'operate' a vehicle not only concerns the motion of the vehicle, but also deals with acts which engage the machinery of the vehicle, which in turn control the motion of the car." Gourd does not suggest she offered a different definition of "operate" and that this alternative was refused. Instead, she argues that

only Spottedhorse was the operator of the van and Instruction 6 improperly allowed the jury to find that a passenger, Son, was operating the van. This argument assumes only one person may operate a vehicle, an assumption in which we do not indulge.

█ This argument also does not take into account that the jury received Instruction 5, which gave the following definition: "OPERATOR: Every person who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle." Gourd did not object to this instruction. Where the instructions as a whole fairly present the law applicable to the issues raised, the judgment will not be disturbed. *Kimery v. Public Service Co. of Oklahoma*, 622 P.2d 1066 (Okla.1980). On this record, the instructions fairly represented the law applicable to the evidence adduced and do not warrant reversal of the judgment.

The third issue is premised on Gourd's contention that the trial court erred by amending the pleadings to conform and thereby allowed the jury to find the Gourds liable on a "general negligence" theory without regard to whether there was "negligent entrustment." Gourd correctly argues liability of her and her husband's estate must arise, if at all, from negligent entrustment of the van, but their discussion presupposes Son was not operating the van. As noted above, the jury heard evidence from which it could have concluded Son was operating the van.

█ This record does not indicate the Gourds were subjected to liability for "general negligence." Although the jury did receive several general instructions about the elements of negligence, these were not tied to the liability of any particular party, and Gourd did not request any limiting instruction. The cause of action against Spottedhorse and Son was based on their alleged negligence, and an explanation of "negligence" was properly addressed to the jury. Nothing in the instructions preserved for review allowed the jury to find the Gourds liable in the absence of a negligent entrust-

ment to an operator of the van.[3] Gourd has not demonstrated that the trial court abused its discretion in conforming the pleadings to the evidence, and we may not reverse the trial court's judgment on this issue.

Finally, Gourd argues the trial court should not have submitted three separate verdict forms to the jury. She also argues that at least the trial court should have limited the judgment against her and her husband's estate to the damages the jury assessed against them, $10,000 actual and $10,000 punitive damages. Insofar as Gourd is concerned, the trial court's critical error was not submitting three separate verdict forms, a procedure to which even McManus' counsel objected at trial, but in lumping the three verdicts together to determine the damages to which McManus was entitled.

 The general rule is that a jury may not apportion actual damages among joint tortfeasors. *Central Petroleum Co. v. Lewis,* 98 Okl. 26, 224 P. 186 (1924). The jury did not, as McManus suggests, merely attempt to "fill in all the necessary blanks" on the verdict forms. Given the separate verdicts, the jury either attempted to parse out a larger award into three verdicts,[4] or the trial court erred in entering a lump sum judgment. Either choice results in reversible error. *Whitney v. Tuttle,* 178 Okl. 170, 62 P.2d 508 (1936).

## CONCLUSION

No reversible error occurred in the submission of the issues to the jury or in the way the jury was instructed to apply the law to the evidence. The judgment is affirmed insofar as liability for actual and punitive damages has been determined. However, reversible error did occur in setting the amount of those damages, and that portion of the judgment which sets the amount of actual and punitive damages is reversed. This matter is remanded to the trial court for further proceedings. If McManus does not agree to a remittitur to reduce the judgment to $10,000 actual and $10,000 punitive damages, the trial court shall order a new trial limited to determining the amount of those damages.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

JONES, P.J., and HANSEN, J., concur.

---

**3.** Gourd's complaint about a "general negligence" theory is based in large part on closing argument by McManus' counsel. However, Gourd did not object to these comments, and such error, if any, was waived. *Moses v. Haney,* 725 P.2d 866 (Okla.1986).

**4.** When McManus responded to the Gourds' motion for new trial, affidavits from five jurors to the effect that the jury intended to award a total of $30,000 were attached as exhibits. These affidavits attempt to impeach the verdicts, and public policy will not allow then to be considered. *Downum v. Muskogee Stockyards and Livestock Auction, Inc.,* 565 P.2d 368 (Okla.1977).