In the Matter of the DEATH OF William "Billy" LOFTON, Karen Lofton, Next of Kin, Appellant,

v.

Orval and Nghi Thi GREEN, Appellees.

No. 80794.

Supreme Court of Oklahoma.

Oct. 17, 1995.

Clyde Kirk, Robert K. McCune, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, for Appellant.

Galen L. Brittingham, Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, for Appellees.

LAVENDER, Justice.

William "Billy" Lofton was six years old when he drowned in his neighbor's swimming pool. The neighbor's were the Greens, they were sued by Billy's mother to recover her damages by reason of his death. She argued the pool was an attractive nuisance and imposed on the Greens a duty of reasonable care although Billy was admittedly, trespassing.

We have never held a private residential swimming pool to be an attractive nuisance although we have held an ornamental "fish pond" constructed on residential property in a heavily populated urban setting was not one, *Dennis v. Spillers*, 199 Okla. 311, 185 P.2d 465 (1947). Also more recently we held a rural stock pond was not an attractive nuisance, *Lohrenz v. Lang*, 787 P.2d 1274 (Okla.1990).

Because of these two decisions, the trial court in this case refused to allow the question of whether the Greens' pool was an attractive nuisance to be submitted to the jury. The issue regarding a duty of the Greens to small children, such as Billy and whether that duty had been breached as represented by a city ordinance requiring swimming pools to be fenced, was submitted to the jury.

The jury returned its verdict wherein it found Billy's mother and the Greens were equally at fault and the damages to the plaintiff to be the total amount of $4,200.00. Because of the finding that the comparative negligence of the plaintiff was 50%, the trial court entered judgment for the plaintiff for $2,100.00. Only the plaintiff appealed urging, as we have said, error of the trial court in refusing to submit attractive nuisance to the jury. The plaintiff also complained of the inadequacy of the verdict.

In *Lohrenz* we re-affirmed the view expressed in *City of Mangum v. Powell*, 196 Okla. 306, 165 P.2d 136, 137 (1946) as follows:

A body of water—either standing, as in ponds and lakes, or running, as in rivers and creeks, or ebbing and flowing, as in the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it *is an apparent open danger, the knowledge of which is common to all* (italics ours); and there is no just view consis-

tent with recognized rights of property owners which would compel one owning land upon which such water, or part of it, stands and flows, to fill it up, or surround it with an impenetrable wall. (emphasis in the original)

■ The above rule and case law does not totally reject the notion that a property owner may be found liable for the drowning death of a small child in his backyard pool if it can be shown (as it was in this case) that the fence he was required to construct to make it difficult for small children to access the pool area did not satisfy all the requirements of an applicable city ordinance and that such failure probably resulted in the child gaining access to the swimming pool. In such a situation, of course, the ordinance was passed to protect small children—like Billy—who in addition to being immature, was also suffering from seizures and required special schooling. The ordinance of the City of Tulsa which was the subject of the court's instruction to the jury provided:

### INSTRUCTION NO. 13

There are duties imposed by ordinances. If you find that a person violated any one of the following ordinances and the violation was the direct cause of the injury, then such violation in and of itself would make such person at fault.

There was in force and effect in Oklahoma, the City of Tulsa, at the time of the occurrence the following ordinances:

"Every person owning land on which there is situated a swimming pool, which contains 24 inches (610 mm) or more of water in depth at any point, shall erect and maintain thereon an adequate enclosure either surrounding the property or pool area, sufficient to make such body of water inaccessible to small children. Such enclosure, including gates therein, shall be not less than 4 feet (1219 mm) above the underlying ground. All gates shall be self-closing and self-latching with latches placed 4 feet (1219 mm) above the underlying ground and otherwise made inaccessible from the outside to small children."

"A natural barrier, hedge, pool cover or other protective device approved by the governing body shall be an acceptable enclosure so long as the degree of protection afforded by the substituted devices or structures is not less than the protection afforded by the enclosure, gate and latch described herein."

There was testimony that the latch on the gate to the front yard was not self-closing or self-latching and that the latch was not "—4 feet (1219 mm) above the underlying ground and otherwise made inaccessible from the outside to small children." There was also testimony the fence was not secure.

■ The jury heard *all* of the tendered evidence of the Greens' negligence and found them liable for the death on the submitted theory that their fence did not comply with the requirements of the city ordinance. If attractive nuisance had been relied on as the plaintiff's central theory of liability, *no additional proof* of the Greens' lack of due care would have come forward during the trial.

### DAMAGE AWARD

Appellant further asserts the damage award was grossly inadequate. Damages recoverable for the death of a minor child are defined under Oklahoma law, 12 O.S.1991 § 1055. The section states:

In all actions hereinafter brought to recover damages for the death of an unmarried, unemancipated minor child, the damages recoverable shall include medical and burial expense, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in support, maintenance and education of such minor child, in such amount as, under all circumstances of the case, may be just.

We have held that a jury verdict will not be set aside as inadequate unless it is "beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption." *Park v. Security Bank & Trust Co.,* 512 P.2d 113, 116 (Okla. 1973). The court of appeals determined the award was inadequate under the above cited

case law, yet, our review of the evidence fails to justify its conclusion. Neither, does Appellant cite to evidence in the record justifying a reversal on the damage issue other than to show that the amount awarded, less the percentage attributed to Appellant's contributory negligence, would just satisfy funeral expenses.

 We are mindful of the loss this parent has suffered. It is the function of the jury however, to properly evaluate the various elements of alleged damages and to pass upon the credibility of lay witnesses and determine the weight and value of their testimony. Art. II Sec. 19, Oklahoma Constitution. *Baker v. Locke Supply Co.*, 736 P.2d 155 (Okla.1987). The extent of the plaintiff's pecuniary and emotional loss was a matter exclusively for the jury to determine. Evidence must be introduced to support an award. In that Appellants do not direct us to any evidence which would substantiate a reversal, the damage award is sustained.

## CONCLUSION

The opinion of the court of appeals is **VACATED.** The decision of the district court is **AFFIRMED.**

ALMA WILSON, C.J., and HODGES, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., and SUMMERS, J., dissent.

1. Common-law jurisprudence *before* the birth of attractive nuisance disallowed recovery for landowner's negligence vis-a-vis a trespassing child. Unintentional harm was *not* actionable. Karsten, Explaining the Fight Over the Attractive Nuisance Doctrine: A Kinder, Gentler Instrumentalism in the "Age of Formalism", 10 Law and History Review 45, 52 (1992).

2. 12 O.S.1991 § 651(4).

3. *See Park v. Security Bank & Trust Co.*, Okl., 512 P.2d 113 (1973).

4. *See Buzzard v. Farmers Ins. Co., Inc.*, Okl., 824 P.2d 1105, 1116 (1991) (Opala, J., concurring in part).

5. The provisions of 12 O.S.1991 § 78 are:

OPALA, Justice, concurring.

The outcome of this case does *not* turn on the trial court's refusal to instruct on attractive nuisance. As the court correctly points out, the *jury was allowed to hear all the tendered* evidence of landowners' negligence. Since none was excluded, nothing could be added on retrial.[1]

*Decisive of today's review* is whether *new trial* is the parent's due because of an "inadequate" damages award in the § 651(4) sense.[2] There is here *no indication* of "passion, partiality, prejudice or corruption"[3] in the jury's concededly conservative assessment of the *pecuniary* and *emotional* loss from the child's death.

It is peculiarly within the province of the fact trier to consider and weigh the impact of *negligent parental supervision* and to evaluate the child's ill health as a *depreciating factor* in computing both the *pecuniary* and *emotional* loss. If the jury system is to stand "inviolate", as commanded by Art. 2, § 19, Okl. Const.,[4] judges must resist the temptation of injecting into the process their individual concept of "justice".

Although I agree that the verdict is quite small, I cannot view it as a product of some *legal error* or condemn it as *dehors* the jury's constitutional authority.[5] I hence join in affirming the nisi prius judgment on the verdict.

KAUGER, Vice Chief Justice, with whom SUMMERS, Justice, joins, dissenting:

I dissent from the majority opinion for two reasons. The first is that although the result

"The court, in every stage of action, *must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse part; and no judgment shall be reversed or affected by reason of such error or defect.*" (Emphasis mine.)
The terms of 20 O.S.1991 § 3001.1 are:
"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, *unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.*" (Emphasis mine.)

might not be altered, I would find that a residential swimming pool which meets the test outlined in the Restatement (Second) of Torts § 339 [1] is an attractive nuisance.[2] However, it is more likely that had the attractive nuisance instruction been given, the ratio of the comparative negligence computation would have resulted in a more appropriate verdict. Basically, this case is on appeal because of the overbroad interpretation by the trial court of our precedents in *Lohrenz v. Lane,* 787 P.2d 1274 (Okla.1990) and *Dennis v. Spillers,* 199 Okla. 311, 185 P.2d 465 (Okla.1947). Failure to address this problem will only continue this misapprehension and invite future error. Nevertheless, the majority opinion should not be read to imply that this Court would not find a swimming pool an attractive nuisance in a subsequent case.

The second reason for my dissent is that I find the damages awarded to the mother of $4,200, reduced by her comparative negligence to an amount barely sufficient to pay the costs of a cheap funeral, statutorily inadequate under the wrongful death statute, 12 O.S.1991 § 1055.[3]

It does not require a mathematician to determine what happened in the jury room. The jury determined one of two things: 1) either this mother was so negligent that she did not deserve to recover anything personally for the death of her child; or 2) this child's life, because he suffered from an attention deficit disorder and learning disabilities, should be valued less than some other child who was not so affected. In either case, the jury calculated an award which, once reduced by the mother's comparative negligence, would barely meet the burial expenses. The mother's gross award was $2,100.00—the burial expenses were $2,096.00.

The wrongful death statute pertaining to children, 12 O.S.1991 § 1055, provides the elements for damages for which a parent is to be compensated. A parent is to receive damages for: 1) medical and burial expenses, 2) loss of services and support, 3) loss of love and companionship, 4) destruction of the parent-child relationship, and 5) loss of monies expended for support, maintenance and education of the child.

Comment (b) to this section notes that the rule as stated is followed in the majority of states in this country. In comment (j) it is stated that the rule generally does not apply to dangers of fire, falling from heights, and water. These are said to be normally understood by children absent other factors creating additional risks of harm or foreseeable dangers to children who cannot appreciate the nature of the harm. A swimming pool in a residential setting is often found to be a condition which could present issues of negligence and foreseeable risk of injury. *Gregory v. Johnson,* 249 Ga. 151, 289 S.E.2d 232, 234 (1982). See, Annot., "Liability of Owner of Private Residential Swimming Pool for Injury or Death Occasioned Thereby," 20 A.L.R.3rd 1395, 1402–05 (1968). See also, Annot., "Liability of Swimming Facility Operator for Injury to or Death of Trespassing Child," 88 A.L.R.3d 1197, 1204–1214 (1978).

---

1. Restatement (Second) of Torts § 339 (1965), see note 2, infra.

2. Five conditions must be met under the Restatement Second standard before a cause of action will exist for trespassing children. Restatement (Second) of Torts § 339 (1965) provides:
 "Artificial Conditions Highly Dangerous to Trespassing Children
 A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 (e) the possessor fails to exercise reasonable care to eliminate the damage or otherwise to protect the children."

3. Title 12 O.S.1991 § 1055 provides:
 "In all actions hereinafter brought to recover damages for the death of an unmarried, unemancipated minor child, the damages recoverable shall include medical and burial expense, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in support, maintenance and education of such minor child, in such amount as, under all circumstances of the case, may be just."

The mother was found to be 50% negligent and she netted .$4.00 from the damages award. However, § 1055 does not base the extent of a parent's loss at the death of a child on the quality of the individual's parenting.[4] Instead, it lists the elements for which a parent is to be recompensed. The mother had a personal right, under § 1055, independent of all others, to recover for the other elements of loss enumerated in the statute.[5] On September 20, 1995—less than two weeks ago, this Court denied rehearing in *Strubhart*

*v. Perry Memorial Hosp. Trust Auth.*, 903 P.2d 263 (Okla.1995). Although *Strubhart* was remanded for a new trial, we noted that $800,000 was not outrageous or wholly unreasonable for the wrongful death of a newborn child. Today, this Court refuses to grant a new trial finding that $4.00 (a 200,000% difference or, at the most optimistic, $2,100 a 400% difference in the earlier approved $800,000 award) is sufficient because of the "sanctity" of the jury verdict under the Okla. Const., art. 2, § 19 [6]—and the lack of evi-

**4.** See, *Matter of the Estate of Lovely,* 848 P.2d 51, 54 (Okla.App.1993); *Williams v. Cover,* 74 Or. App. 711, 704 P.2d 548 (1985).

**5.** *Gaither v. City of Tulsa,* 664 P.2d 1026, 1028 (Okla.1983).

**6.** Although the Okla. Const., art. 2, § 19 provides that "(t)he right to jury trial shall be and remain inviolate," this section of the Constitution has not kept this Court from reducing jury verdicts in sixty-two cases since 1945. See, e.g., *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105 (Okla.1991); *Protest of Flint Resources,* 780 P.2d 665 (Okla. 1989); *Chandler v. Denton,* 741 P.2d 855 (Okla. 1987); *LeFlore v. Reflections of Tulsa, Inc.,* 708 P.2d 1068, 64 A.L.R.4th 1001 (Okla.1985); *Root v. Kamo Elec. Co-op., Inc.,* 699 P.2d 1083 (Okla. 1985); *Gaither By and Through Chalfin v. City of Tulsa,* 664 P.2d 1026 (Okla.1983); *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907 (Okla.1982); *Hobbs v. Watkins,* 481 P.2d 746 (Okla.1971); *Basden v. Mills,* 472 P.2d 889 (Okla.1970); *Davon Drilling Co. v. Ginder,* 467 P.2d 470 (Okla. 1970); *Missouri–Kansas–Texas R. Co. v. Drumb,* 454 P.2d 308 (Okla.1969); *Smith v. Davis,* 430 P.2d 799 (Okla.1967); *Sandlin Oil Service, Inc. v. Dull,* 398 P.2d 813 (Okla.1964); *Mid–Continent Cas. Co. v. State Ins. Fund,* 398 P.2d 92 (Okla. 1964); *City of New Cordell v. Lowe,* 389 P.2d 103 (Okla.1963); *John A. Brown Co. v. Shelton,* 391 P.2d 259 (Okla.1963); *Carraco Oil Co. v. Morhain,* 380 P.2d 957 (Okla.1963); *City of Henryetta v. Runyan,* 370 P.2d 565 (Okla.1962); *Paul Hellman, Inc. v. Reed,* 366 P.2d 391 (Okla.1961); *St. Louis–San Francisco Ry. Co. v. Kilgore,* 366 P.2d 936 (Okla.1961); *St. Louis–San Francisco Ry. Co. v. McBride,* 376 P.2d 214 (Okla.1961); *Venable v. Burton,* 363 P.2d 224 (Okla.1961); *Missouri–Kansas–Texas R. Co. v. Edwards,* 361 P.2d 459 (Okla.1961); *Missouri–Kansas–Texas R. Co. v. Edwards,* 361 P.2d 474 (Okla.1961); *Pratt v. Womack,* 359 P.2d 223 (Okla.1961); *St. Louis–San Francisco Ry. Co. v. Fox,* 359 P.2d 710, 83 A.L.R.2d 1318 (Okla.1961); *Superior Oil Co. v. Griffin,* 357 P.2d 987 (Okla.1960); *Wilcox Oil Co. v. Lawson,* 341 P.2d 591 (Okla.1959); *Hembree v. Southard,* 339 P.2d 771 (Okla.1959); *Roussel v. Russell,* 339 P.2d 522 (Okla.1959); *Ruth v. Reeves,* 340 P.2d 452 (Okla.1959); *Beckman, Inc. v. May,* 331 P.2d 923 (Okla.1958); *Mid–Continent Pipe Line Co. v. Eberwein,* 333 P.2d 561

(Okla.1958); *Cities Service Oil Co. v. Merritt,* 332 P.2d 677 (Okla.1958); *Oklahoma State Union of Farmers' Educational & Co-op. Union of America v. Folsom,* 325 P.2d 1053 (Okla.1958); *Kansas City Southern Ry. Co. v. Marrow,* 326 P.2d 817 (Okla.1958); *Moran v. Young,* 325 P.2d 1065 (Okla.1957); *Franklin Cas. Co. v. Bradley,* 316 P.2d 860 (Okla.1957); *Mikel Drilling Co. v. Dunkin,* 318 P.2d 435 (Okla.1957); *City of Tulsa v. Pearson,* 296 P.2d 788 (Okla.1956); *Stricker v. Vahldick,* 293 P.2d 367 (Okla.1955); *Gutowsky v. Halliburton Oil Well Cementing Co.,* 287 P.2d 204 (Okla.1955); *Wilcox Oil Co. v. Walters,* 284 P.2d 726 (Okla.1955); *Southwestern Greyhound Lines, Inc. v. Rogers,* 267 P.2d 572 (Okla.1954); *Burke v. Thomas,* 313 P.2d 1082 (Okla.1957); *Copeland Oil Co. v. Parker,* 306 P.2d 714 (Okla.1957); *Chickasha Cotton Oil Co. v. Hancock,* 306 P.2d 330 (Okla.1957); *Waddle v. Gammel,* 305 P.2d 559 (Okla.1956); *National Farmers Union Property & Cas. Co. v. Watson,* 298 P.2d 762 (Okla. 1956); *Oklahoma Natural Gas Co. v. Appel,* 266 P.2d 442 (Okla.1953); *Fruechting v. Gilley,* 259 P.2d 530 (Okla.1953); *Magnolia Petroleum Co. v. Sutton,* 208 Okla. 488, 257 P.2d 307 (Okla.1953); *Gilliland v. Clark,* 204 Okla. 608, 233 P.2d 288 (Okla.1951); *Moyer v. Cordell,* 204 Okla. 255, 228 P.2d 645 (Okla.1951); *Tollett v. Clay,* 207 Okla. 283, 249 P.2d 412 (Okla.1952); *Chicago, R.I. & P.R. Co. v. Turner,* 206 Okla. 340, 243 P.2d 673 (Okla.1952); *City of Henryetta v. Runyan,* 203 Okla. 153, 219 P.2d 220 (Okla.1950); *Reinhart & Donovan Co. v. Dunlap,* 200 Okla. 512, 197 P.2d 958 (Okla.1948); *Connecticut Fire Ins. Co. v. Horne,* 201 Okla. 643, 207 P.2d 931 (Okla.1949); *Thompson v. Minnis,* 201 Okla. 154, 202 P.2d 981 (Okla.1949); *Greenlease–Ledterman, Inc. v. Hawkins,* 199 Okla. 331, 186 P.2d 318 (Okla. 1947); *Hancock v. Myers,* 198 Okla. 126, 176 P.2d 820 (Okla.1946); *Smith v. Ogle,* 196 Okla. 295, 164 P.2d 992 (Okla.1945). See also, *American Nat'l Bank & Trust Co. of Sapulpa v. BIC Corp.,* 880 P.2d 420 (Okla.App.1994), *cert. denied* (1994); *McManus v. Gourd,* 873 P.2d 1060 (Okla. App.1994); *Nalley v. Kellwood Co.,* 867 P.2d 1336 (Okla.App.1993), *cert. denied* (1994); *Scribner v. Hillcrest Medical Center,* 866 P.2d 437 (Okla.App.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 288, 126 L.Ed.2d 238 (1993); *State v. Van Lear,* 813 P.2d 555 (Okla.App.1991).

dence to support an award for the mother's loss of services and support, destruction of the parent-child relationship, loss of love and companionship, and loss of monies expended for support, maintenance and education of the child.

One could take judicial notice that $4.00 wouldn't cover the cost of a couple of "Happy Meals" much less the money the mother spent on the support, maintenance and education of a six-year old. The award, leaving nothing for grief, solace and loss of companionship is shocking to the conscience, inadequate as a matter of law,[7] and cries out for a new trial.[8]

**SUMMERS, Justice, dissenting.**

I join in the result of Justice Kauger's dissenting opinion. I too would find a swimming pool an attractive nuisance if it meets the Restatement test, and I find the damages grossly inadequate.

---

**7.** *Hall v. Hall,* 240 Va. 360, 397 S.E.2d 829 (1990). See, Annot., "Excessiveness & Adequacy of Damages for Personal Injuries resulting in Death of Minor," 49 A.L.R.4th 1076, 1113–17 (1986).

**8.** Title 12 O.S.1991 § 651 provides in pertinent part:
"A new trial is a reexamination in the same court of an issue of fact, or of law, either or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the

court. The former verdict, report or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party:
... Fourth. Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice...."
*Park v. Security Bank & Trust Co.,* 512 P.2d 113, 116 (Okla.1973).